J-A16020-20

2020 PA Super 256

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TANISHA MUHAMMAD | |
| Appellant | No. 1455 MDA 2018 |

Appeal from the Judgment of Sentence Entered July 20, 2018
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0004248-2016

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

OPINION BY STABILE, J.:                    **FILED OCTOBER 23, 2020**

Appellant, Tanisha Muhammad, appeals from her judgment of sentence for interference with custody of children, false imprisonment, unlawful restraint, and conspiracy to commit these offenses.[1]  Based on Appellant's convictions for interference with custody of children ("interference") and conspiracy to interfere with custody of children ("conspiracy"), the trial court ordered Appellant to register as a sexual offender under Revised Subchapter H of the Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10—9799.42,[2] as a Tier I offender.  We hold that SORNA

---

[1] 18 Pa.C.S.A. §§ 2902(a), 2903(a), 2904, and 903, respectively.  The counts for false imprisonment and conspiracy to commit false imprisonment merged for purposes of sentencing.

[2] SORNA was enacted in 2011 and became effective on December 20, 2012. Through Acts 10 and 29 of 2018, the General Assembly split Subchapter H of SORNA into a Revised Subchapter H and Subchapter I.  Subchapter I addresses sexual offenders who committed an offense on or after April 22,

is unconstitutional as applied to Appellant, because it creates an irrebuttable presumption that her convictions for interference and conspiracy make her a risk to commit additional sexual offenses. Accordingly, we vacate the trial court's order directing her to register as a sexual offender. Otherwise, we affirm the judgment of sentence.

The trial court summarized the evidence against Appellant as follows:

Khalid Muhammad ("Khalid") and Angelita Rodriguez ("Angelita") shared a three-year-old child, Pharaoh Samir Rodriguez ("Pharaoh") at the time of the incident. Angelita also had a 17-year-old daughter, Liajah Rodriguez ("Liajah"). As of January 7, 2014, pursuant to a valid custody order, Angelita was to have primary physical custody of Pharaoh and Khalid was to have partial physical custody of Pharaoh from Friday between noon and 1 P.M. until Sunday 4 P.M. and 5 P.M. Both parties had written notice that if any party feels that another party has violated this order, they were to petition the Court as set forth in Pa.R.C.P. 1915.12. While Angelita was incarcerated between April of 2015 and June of 2016, Pharaoh was in the care of Khalid. After being released from incarceration, Angelita contacted Khalid so that she could see Pharaoh and spend time with him. Upon agreement, Angelita picked Pharaoh up from Khalid in Philadelphia. Angelita agreed with Khalid that she would return Pharaoh to Khalid on Sunday, August 14, 2016. However, Angelita, upon finding some bruises on Pharaoh, told Khalid that she knew that the bruises were from Khalid and that she was not going to return Pharaoh.

On Monday, August 15, 2016, approximately at 2:36 P.M., Liajah, was at the front steps of 111 Orange Street, Reading, PA, with Pharaoh. Soon after, a silver Kia, pulled over down the block and

_____

1996, but before December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.51-9799.75. Revised Subchapter H, which applies to offenders such as Appellant who committed an offense on or after December 20, 2012, contains stricter requirements than Subchapter I. *See* 42 Pa.C.S.A. §§ 9799.10-9799.42. All references to "SORNA" in this opinion are to Revised Subchapter H. For an exhaustive summary of SORNA's legislative history, ***see Commonwealth v. Mickley***, —A.3d—, 2020 Pa. Super. 233, n. 3 (Pa. Super., Sep. 24, 2020).

Khalid stepped out of the vehicle. Khalid then picked up Pharaoh and tried to put Pharaoh on to the vehicle. Liajah engaged in a struggle with Khalid in attempt to get Pharaoh back. Jose Mejia also entered the struggle to help Liajah. Lisa Walker ("Lisa") and Tanisha Muhammad ("Appellant"), Khalid's sister, then came out from the vehicle and pulled Liajah away from the vehicle in order to prevent Liajah from getting near Pharaoh. After Pharaoh was placed in the vehicle and the door of the vehicle was shut, Appellant went back to the driver's seat.

Liajah opened the door of the vehicle and attempted to remove Pharaoh from the vehicle. After series of struggles, Lisa pulled Liajah [i]nto the vehicle. As a result of these struggles, Liajah suffered several bruises on her arm and chest, and her t-shirt was ripped. Pharaoh suffered a bump in his head and some scratches on his back.

Appellant drove off from 111 Orange Street while Pharaoh was placed on her lap. Liajah asked the Appellant and Lisa to let her out which the Appellant refused to do. While Appellant was driving through Cotton Street, Liajah opened the door of the vehicle and started to yell out for help. While the door was open, Lisa attempted to push Liajah out of the moving vehicle. After Liajah managed to hang on, Lisa rolled up the windows and locked it. Appellant told Liajah that she and Pharaoh are not going back home.

After the Reading Police weres informed of the incident at 111 Orange Street, Criminal Investigator Sweitzer ("C.I.") attempted to contact Appellant numerous times. At one point, Appellant finally answered the phone. When the C.I. asked to turn around the vehicle and come back, Appellant told the C.I. that she was not going to do that. The C.I. asked to speak to Liajah to ensure her safety and Pharaoh's, but the Appellant refused to put Liajah on the phone and hung up the phone. Appellant did not respond to any further calls from the C.I.

Appellant pulled into Chestnut Hill train station where Khalid's mother ("Bonnie"), and Ebony, Khalid's sister, in a vehicle, pulled up next to Appellant. Bonnie took Pharaoh out of the silver Kia and placed Pharaoh onto the other vehicle, where thereafter Ebony drove off with Pharaoh. Bonnie then got in to the front seat of the silver Kia. Appellant then stopped at a store where Bonnie and Liajah entered the store and bought a shirt and sandals for

Liajah.  Then, Appellant dropped Liajah off at the Center City Greyhound Station in Philadelphia, where Bonnie took Liajah inside the station and bought Liajah a bus ticket to Reading.  When Bonnie left with Appellant, Liajah asked a lady to use her phone and contacted her mother, Angelita.  Liajah told Angelita where she was and what had happened.  Angelita told Liajah that she had called the police and she was to wait for the police at the bus station.  Liajah was too scared and got on to the bus headed for Reading, PA.  At the first stop, police officers found Liajah and she was escorted back to the local police station.  Soon after, the Reading Police picked Liajah up at the station and brought her back to Reading at nighttime of August 15, 2016.

On August 16, 2016, Bonnie called Angelita so that she could return Pharaoh back to Angelita.  Bonnie instructed Angelita to meet at the intersection of Broad Street and another street in Philadelphia.  After Angelita and C.I. waited for a while, at around 8:30 P.M., Bonnie arrived at the location and returned Pharaoh to Angelita.

Trial Court Opinion, 11/13/18, at 3-5 (with some minor grammatical revisions) (references to notes of trial testimony).

Following a bench trial, the court found Appellant guilty of the offenses listed above.  These appear to be Appellant's first and only criminal offenses. N.T., 7/20/18, at 24 (Appellant's prior record score is zero); *id.* at 34 (court's acknowledgement that these offenses were "totally out of character" for Appellant based on the presentence investigation).

Prior to sentencing, Appellant served the court a memorandum raising a series of constitutional challenges to SORNA, including an argument that SORNA violates Appellant's right to reputation under the Due Process Clause of the Pennsylvania Constitution by creating an irrebuttable presumption that she is a high risk to commit another sexual offense.  At sentencing, counsel

entered this memorandum into the record and argued that SORNA is unconstitutional "as it applies to [Appellant]." N.T., 7/20/18, at 4. The court responded, "[I] am in no position to hold here that [SORNA] is unconstitutional as applied to [Appellant], and I will not do so." *Id.* at 4-5. Appellant acknowledged filling out a form notifying her of her requirement to register under SORNA for her convictions for interference and conspiracy. *Id.* at 39-40. This form was admitted into the record.[3] The court sentenced Appellant to three to twenty-three months' imprisonment.

Appellant filed timely post-sentence motions, which the court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

1. Whether the registration requirements of SORNA are unconstitutional and violated [Appellant]'s rights under the Pennsylvania and United States constitutions in that SORNA denied [Appellant] procedural due process under Article I and XI of the Pennsylvania Constitution because it created an irrebuttable presumption that those convicted of enumerated offenses "pose a high risk of committing additional sexual offenses" depriving those individuals of the fundamental right to reputation.

---

[3] The court did not direct that Appellant's convictions for the Tier I offenses of false imprisonment and unlawful restraint required her to register under SORNA. Such a finding would have been invalid. SORNA does not require registration for unlawful restraint or false imprisonment unless they are graded as felonies. *See* 42 Pa.C.S.A. § 9799.14(b)(1), (2) (registration as sex offender required for felony unlawful restraint (18 Pa.C.S.A. § 2902(b)) and felony false imprisonment (18 Pa.C.S.A. § 2903(b)). Appellant's convictions were under the misdemeanor subsections of the unlawful restraint and false imprisonment statutes, 18 Pa.C.S.A. §§ 2902(a) and 2903(a), respectively, and thus fell outside SORNA's purview.

2. Whether SORNA denied [Appellant] procedural due process under Article [I], Section 1 of the Pennsylvania Constitution because it unlawfully restricts liberty and privacy without notice and an opportunity to be heard.

3. Whether SORNA violates substantive due process under the state and federal constitutions because SORNA deprives individuals of inalienable rights and fails to satisfy strict scrutiny.

4. Whether SORNA constitutes criminal punishment and therefore violates the separation of powers doctrine because it usurps the exclusive judicial function of imposing a sentence.

5. Whether SORNA contravenes the 5th, 6th and 14th Amendments of the United States Constitution and the corresponding protections of the Pennsylvania Constitution because as a criminal punishment, SORNA cannot be imposed without due process, notice and opportunity to contest its imposition, and ensuring that each fact necessary to support imposition of mandatory sentences is submitted to a jury and proven beyond a reasonable doubt.

Appellant's Brief at 15-16.

We find Appellant's first argument dispositive of this appeal. SORNA declares that "[s]exual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S.A. § 9799.11(a)(4). Appellant contends that both on its face and as applied to her, SORNA violates her right to reputation under Article I, Section 1 of the Pennsylvania Constitution[4] by

_____

[4] Article I, Section 1 of the Pennsylvania Constitution, Pennsylvania's due process clause, provides, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, **possessing and**

creating an irrebuttable presumption that she poses a high risk of committing additional sexual offenses.

Appellant's constitutional challenge is a question of law for which our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Torsilieri**, 232 A.3d 567 (Pa. 2020). When addressing constitutional challenges to legislative enactments, we recognize that "the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society," but also that "any restriction is subject to judicial review to protect the constitutional rights of all citizens." **In re J.B.**, 107 A.3d 1, 14 (Pa. 2014). A party challenging a statute "must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution." **Id.**

There are two types of constitutional challenges, facial and as-applied. **Commonwealth v. Brown**, 26 A.3d 485, 493 (Pa. Super. 2011). A facial attack tests a law's constitutionality based on its text alone without considering the facts or circumstances of a particular case. **Id.** The court does not look beyond the statute's explicit requirements or speculate about hypothetical or imaginary cases. **Germantown Cab Company v. Philadelphia Parking Authority**, 206 A.3d 1030, 1041 (Pa. 2019). An as-

_____

**protecting** property and **reputation**, and of pursuing their own happiness." (Emphasis added.)

applied attack on a statute is more limited. It does not contend that a law is unconstitutional as written, but that its application to a particular person under particular circumstances deprives that person of a constitutional right. **Brown**, 26 A.3d at 493. "[W]hile as-applied challenges require application of the ordinance to be ripe, facial challenges are different, and ripe upon mere enactment of the ordinance." **Philadelphia Entertainment & Development Partners v. City of Philadelphia**, 937 A.2d 385, 392 n. 7 (Pa. 2007). It is permissible to raise both facial and as-applied challenges to a statute. **Id.** (addressing both facial and as-applied challenges to tax ordinance). In this appeal, Appellant raises both types of challenges to SORNA's "high risk" text.

SORNA was enacted in 2011 and became effective on December 20, 2012. As stated above, SORNA prescribes that "[s]exual offenders pose a high risk of committing additional sexual offenses[.]" 42 Pa.C.S.A. § 9799.11(a)(4). Based on this presumption, SORNA requires the State Police to maintain a statewide registry of sexual offenders that lists substantial information concerning the offenders. 42 Pa.C.S.A. § 9799.16. Further, the State Police must disseminate this information to the public through a website that is searchable by "any given zip code or geographic radius set by the user." 42 Pa.C.S.A. § 9799.28. At sentencing, the trial court must, *inter alia*, inform a sexual offender of the offender's duty to register and require the offender to

read and sign a form stating that the duty to register under this subchapter has been explained. 42 Pa.C.S.A. § 9799.23(a).

SORNA defines a sexual offender as "an individual who has committed a sexually violent offense[.]" 42 Pa.C.S.A. § 9799.12. There are three tiers of sexually violent offenses. 42 Pa.C.S.A. § 9799.14. Tier I includes the least serious offenses and requires annual reporting for fifteen years. 42 Pa.C.S.A. § 9799.15(b). Tier II offenders must report semiannually for twenty-five years, and Tier III offenders must report quarterly for their lifetimes. *Id.*, § 9799.15(c, d). Appellant's offenses of interference and conspiracy are Tier I offenses requiring her to register as a sex offender for fifteen years. 42 Pa.C.S.A. § 9799.15(b).

Because our Supreme Court has declined to "pigeonhole" an irrebuttable presumption challenge as a procedural or substantive due process challenge, *Torsilieri*, 232 A.3d at 581, we address this claim simply as an "irrebuttable presumption" challenge. An irrebuttable presumption is unconstitutional when it (1) encroaches on an interest protected by the due process clause, (2) the presumption is not universally true, and (3) reasonable alternative means exist for ascertaining the presumed fact. *J.B.*, 107 A.3d at 14.

In *J.B.* and *Torsilieri*, the Supreme Court analyzed whether SORNA utilizes an unconstitutional irrebuttable presumption. In *J.B.*, several juvenile offenders argued that SORNA violated their due process rights by including an irrebuttable presumption that all juvenile offenders "pose a high risk of

committing additional sexual offenses," the same language that Appellant challenges here. The Court agreed. It held that SORNA's presumption impinges upon the juvenile offenders' right to reputation embodied within Article I, Section 1 of the Pennsylvania Constitution without giving them a meaningful opportunity to challenge the presumption. *Id.* at 16. Next, based on research credited by the trial court, the Court concluded that the presumption was not universally true. *Id.* at 19. Finally, the Court observed that SORNA already provides for individualized assessment of adult sexual offenders as sexually violent predators and juvenile offenders as sexually violent delinquent children. *Id.* Thus, it was possible to use a similar individualized assessment process to consider whether juvenile sexual offenders posed a high risk of recidivating.[5] *Id.*

In *Torsilieri*, an adult defendant convicted of aggravated indecent assault and indecent assault claimed that SORNA was unconstitutional on its face by creating an irrebuttable presumption that all sexual offenders pose a high risk of recidivation. The trial court agreed with the defendant. It opined that "[t]he public declaration, based on faulty premises . . ., that all sexual offenders are dangerous recidivists only serves to compound the isolation and

---

[5] Following *J.B.*, this Court held that *J.B.* applies not only to juveniles but also to criminal defendants who committed their crimes as juveniles but were convicted as adults. *Commonwealth v. Haines*, 222 A.3d 756, 758 (Pa. Super. 2019).

- 10 -

ostracism experienced by this population and sorely diminish their chances of productively reintegrating into society." Trial Ct. Op., *Commonwealth v. Torsilieri*, No. 15-CR-0001570-2016, at 44 (C.C.P. Chester Cty., Aug. 30, 2018). The court reasoned that SORNA applied not only to sexual offenses but also to crimes such as unlawful restraint, 18 Pa.C.S.A. § 2902(b), which did not necessarily entail sexual conduct, but subjected the offenders to "global public shaming as incorrigible sexual recidivists." *Id.* at 44-45.

The Commonwealth appealed to the Supreme Court, which examined the global argument whether SORNA created an irrebuttable presumption as to all sexual offenders. *Torsilieri*, 232 A.3d at 585-88. Although the Court acknowledged that the defendant presented "colorable constitutional challenges" through the scientific research he presented to the trial court in expert affidavits, *id.* at 584, the Court held that remand was necessary

> to allow the parties to present additional argument and evidence to address whether a scientific consensus has developed to overturn the legislative determinations in regard to adult sexual offenders' recidivation rates and the effectiveness of a tier-based registration and notification system as they relate to the prongs of the irrebuttable presumption doctrine.

*Id.* at 587-88.[6]

---

[6] Shortly before the Court decided *Torsilieri*, it held in *Commonwealth v. Butler*, 226 A.3d 972 (Pa. 2020), that SORNA's provisions relating to sexually violent predators ("SVPs") are constitutional. An SVP is an individual convicted of one or more sexually violent offenses whom the Sexual Offender Assessment Board determines to have "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually

Against this backdrop, we turn to the irrebuttable presumption arguments in Appellant's brief. Appellant first presents the same facial challenge that the Supreme Court recently addressed in *Torsilieri*, namely, SORNA creates an irrebuttable presumption that all sexual offenders are dangerous and pose a high risk of recidivation. Appellant's Brief at 26-35. We think it would be inconsistent with *Torsilieri* for us to decide Appellant's facial challenge. The Supreme Court held in *Torsilieri* that the record in that case was insufficient to resolve the defendant's facial challenge to SORNA's constitutionality, and the Court remanded for submission of further evidence on the global issues at the heart of the facial challenge. Since the record in this case is more sparse than in *Torsilieri*,[7] it would be inconsistent with *Torsilieri* for us to rule on Appellant's facial challenge without further evidentiary proceedings. *See also Mickley*, 2020 Pa. Super. 233, at 7-10 (in child pornography case, remanding in accordance with *Torsilieri* for evidentiary proceedings whether SORNA creates facially unconstitutional

_____

violent offenses." 42 Pa.C.S.A. § 9799.12. The trial court herein did not designate Appellant, an SVP, so this case does not relate in any way to SORNA's SVP provisions or to the analysis of the SVP provisions in *Butler*.

[7] Prior to the appeal in *Torsilieri*, the defendant submitted expert affidavits citing scientific studies indicating that sexual offenders had low recidivism rates. The Supreme Court determined that "a hearing on the merits of the evidence" was necessary instead of "mere citations" to studies. *Torsilieri*, at *12. In contrast, Appellant did not present any scientific evidence at sentencing in the present case.

irrebuttable presumption against sexual offenders). However, unlike in *Torsilieri* or *Mickley*, we see no need to remand for hearings on Appellant's global facial challenge, because we find merit to Appellant's as-applied challenge limited to the particular circumstances of this case.[8]

The first prong of the irrebuttable presumption test requires us to examine whether, as applied to this case, SORNA encroaches on a due process right of Appellant. We find guidance on this subject from *J.B.'s* discussion of SORNA's impact on juveniles' due process right to reputation.

> SORNA explicitly declares that sexual offenders, including juvenile offenders, "pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S.[A.] § 9799.11(a)(4). Indeed, a primary purpose of SORNA is to inform and warn law enforcement and the public of the potential danger of those registered as sexual offenders. Moreover, even without this language, the common view of registered sexual offenders is that they are particularly dangerous and more likely to reoffend than other criminals. *See*, *e.g.*, [*In the Interest of B.B. et al.*, No. CP–45–JV–248–2012 (CP Monroe Jan. 16, 2014),] at 19 ("Common sense, as well as our society's perception of Megan's Law registrants, would lead an average person of reasonable intelligence to conclude that there is something dangerous about the registrant."); Juveniles' Brief at 20 (referencing research regarding public perceptions of sexual offenders). As argued by the Juveniles and found by the trial court, registration also negatively affects juvenile offenders['] ability to obtain housing, schooling, and employment, which in turn hinders their ability to rehabilitate. Tr. Ct. Op. at 19. Thus, SORNA registration requirements, premised upon the presumption that all sexual offenders pose a high risk of

---

[8] We note that counsel for Appellant preserved her as-applied argument for appeal by asserting at sentencing that SORNA is unconstitutional "as it applies to [Appellant]." N.T., 7/20/18, at 4.

- 13 -

recidivating, impinge upon juvenile offenders' fundamental right to reputation as protected under the Pennsylvania Constitution.

Importantly, SORNA does not provide juvenile offenders a meaningful opportunity to challenge the presumption. While a juvenile offender is provided an opportunity to be heard regarding the adjudication of delinquency for the relevant crime, the delinquency hearing does not consider the relevant question of whether the juvenile offender is at risk of reoffense. Instead, the juvenile offender is automatically designated a sexual offender solely as a result of the delinquency adjudication under Section 9799.12 (defining "juvenile offender" and "sexual offender") and 9799.13 (entitled "Applicability"), with the attendant presumption of a high risk of reoffense. Moreover, we reject the suggestion that a Section 9799.17 hearing twenty-five years in the future, only upon perfect compliance with the registration requirements, provides an opportunity to be heard on the question of likelihood of recidivating. As we noted in [**Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Clayton**, 684 A.2d 1060, 1063 (Pa. 1996)], a process which eliminates consideration of the paramount factor, in this case the likelihood of committing additional sexual offenses, does not provide procedural due process, as it blocks the opportunity to be heard on the relevant issue. Accordingly, we conclude that the Juveniles have asserted a constitutionally protected interest in their reputation that has been encroached by the use of an irrebuttable presumption.

**Id.** at 16-17. In our view, **J.B.'s** analysis concerning SORNA's impact on juvenile offenders' reputation is equally pertinent as to Appellant. "[R]eputation is an interest that is recognized and protected by our highest state law: our Constitution." **R. v. Department of Public Welfare**, 636 A.2d 142, 149 (Pa. 1994) (citing Pa. Const., Art. I, § 1). It is beyond serious dispute that registration as a sex offender creates a presumption—indeed, a stigma—that Appellant is a dangerous adult who is likely to commit further sexual offenses. 42 Pa.C.S.A. § 9799.11(a)(4). This mark of disgrace profoundly affects her ability to obtain employment, education, and housing,

which in turn impedes her ability to function as a productive member of society. Furthermore, SORNA fails to provide Appellant a meaningful opportunity to rebut the presumption that she is a danger to re-offend. She was automatically designated a Tier I sexual offender based on her convictions for interference and conspiracy, and she will not have any opportunity to challenge this designation or claim that she has been rehabilitated throughout the fifteen-year registration period. These factors convince us that SORNA, as applied to this case, creates an irrebuttable presumption that encroaches upon Appellant's constitutional interest in her reputation.

The second prong of the irrebuttable presumption test calls for analysis whether SORNA's presumption that sexual offenders present a high risk of recidivating is true as to Appellant. It plainly is not. Prior to this case, Appellant had no criminal history. Furthermore, there is no evidence in this case that Appellant committed or intended to commit any acts of a sexual nature. The Crimes Code defines the crime of interference as follows, "A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." 18 Pa.C.S.A. § 2904(a). A "taking" from custody "connotes a substantial interference with parental control." *Commonwealth v. Rodgers*, 599 A.2d 1329, 1331 (Pa. Super. 1991). "Enticing" is defined as "[t]o wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce." *Id.* "It is

the interruption of lawful custody, and not merely the 'taking'[,] that constitutes the statutory offense [of interference]." *Id.* Furthermore, to prove conspiracy, the Commonwealth must prove that the defendant entered into an agreement to commit or aid in a criminal act with another person or persons with a shared criminal intent, and an overt act was done in furtherance of the conspiracy. 18 Pa.C.S.A. § 903. The present case arose from a custody dispute between Khalid and Angelita, the father and mother of a three-year-old child, Pharaoh. Appellant assisted Khalid in taking Pharaoh away from Angelita by (1) driving with Khalid and Lisa Walker to Pharaoh's home in Reading, (2) pulling Angelita's daughter, Liajah, away while Pharaoh was placed in the car, (3) leaving Reading in the car with Khalid, Pharaoh, Liajah, and Lisa, and (4) driving to a train station in Philadelphia, where Pharaoh was transferred to another vehicle. Although Pharaoh's abduction clearly was a "taking" in violation of the interference statute, there is no evidence that Appellant engaged in "enticing" behaviors associated with sexual predators, such as coaxing or attracting Pharaoh into the vehicle. Nor was there any sexual objective in the conspiracy to abduct Pharaoh. Although Appellant did not submit any expert or scientific testimony concerning her risk to reoffend, it is clear, from the absence of any sexual misconduct in this case along with Appellant's otherwise spotless record, that she is not a high risk to commit additional (or any) sexual offenses.

The final prong of the irrebuttable presumption test requires examination of whether reasonable alternatives exist to determine whether Appellant is a high risk to commit additional sexual offenses in the future. Appellant pointed out in her sentencing memorandum and again in this appeal that two such alternatives exist. First, there are well-established risk assessment tools employed in Pennsylvania. The Sexual Offenders Assessment Board ("SOAB"), the entity created by the legislature to perform sexually violent predator ("SVP") assessments, 42 Pa.C.S.A. §§ 9799.24, 9799.35, has identified a variety of "actuarial instruments" that are available and preferable for determining risk assessments. *See* SOAB Containment Model (July 2006), at 192-208. These tools "should be routinely used" because they can help "distinguish between low-risk and high-risk sex offenders." *Id.* at 207. Failure to do so "wastes resources" because "most sex offenders are never reconvicted for a sexual offense." *Id.* at 207. Second, the SOAB itself could perform an individualized assessment, similar to the tests it performs to determine whether individuals are SVP's. 42 Pa.C.S.A. § 9799.24. Neither of these alternatives was used here.

For these reasons, we hold that, as applied to Appellant, SORNA's provision that sexual offenders pose a high risk of recidivating is an irrebuttable presumption that clearly, palpably, and plainly violates Appellant's constitutional right to reputation. Appellant's convictions for interference and conspiracy to interfere with custody of children were not sexual offenses. The

fact that Appellant had a prior record score of zero and her presentence report acknowledged that Appellant's offenses were "totally out of character" for her underscore the illegality of SORNA's presumption as applied to Appellant. Nothing in this record suggests that Appellant is a high risk to commit additional (or any) sexual offenses. Under these circumstances, we find no need for a remand, such as that ordered in *Tonsilieri* or *Mickley*, to determine whether Appellant poses a high risk of recidivism.

Our recent decision in *Commonwealth v. Manzano*, —A.3d—, 2020 WL 4913292 (Pa. Super., Aug. 21, 2020), does not change the outcome of this case. The trial court in *Manzano* ordered the defendant to register as a Tier III offender under SORNA based on his *nolo contendere* pleas to the sexual offenses of rape of a child, aggravated indecent assault of a child, and indecent assault of a child.[9] Citing *Torsilieri*, the defendant argued, *inter alia*, that SORNA is unconstitutional because it creates an irrebuttable presumption of dangerousness in violation of his right to reputation under the Pennsylvania Constitution. Without mentioning whether the defendant was raising a facial or an as-applied challenge, this Court rejected his argument, reasoning, "[U]nlike the defendant in *Torsilieri*, [the defendant] has produced no scientific evidence whatsoever to support his claims that the

_____

[9] The court also ordered the defendant's designation as an SVP. The defendant raised unsuccessful challenges to his SVP designation in this Court. *Id.*, 2020 WL 4913292, at **2-6. These issues are not relevant in the present case because, as noted above, Appellant is not an SVP.

underlying legislative policy infringes on [his] rights." **Id.**, 2020 WL 4913292, at *7. In contrast, we have held in this case that Appellant did not need scientific evidence to prevail, because other evidence in the record established that SORNA is unconstitutional as applied to Appellant.

We vacate the order directing Appellant to register as a sex offender under SORNA. Because of our determination that SORNA creates an unconstitutional irrebuttable presumption as applied to Appellant, we see no need to address the other constitutional challenges to SORNA raised in this appeal.

Judgment of sentence affirmed. Order directing Appellant to comply with SORNA vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2020