J-S22002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                        :          PENNSYLVANIA
                                         :

           v.                          :
                                         :

DENVER SAMUEL MCCOURT            :
                                       :

         Appellant                 :     No. 1010 MDA 2020

Appeal from the Judgment of Sentence Entered September 6, 2019
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0001931-2018

BEFORE:   PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:         **FILED NOVEMBER 29, 2021**

Denver McCourt appeals from the judgment of sentence entered after a jury convicted him of aggravated indecent assault and indecent assault.[1] McCourt admits to having sexual intercourse with the complainant in his camper after meeting her at a local bar while out with some of his friends, but

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] McCourt appeals from the September 6, 2019 judgment of sentence. McCourt filed timely post-sentence motions on September 12, 2019. The trial court held a hearing on the post-sentence motions on December 17, 2019, at which time an order was issued holding the matter under advisement. Under the Rules of Criminal Procedure, McCourt's post-sentence motions were denied by operation of law on January 10, 2020. **See** Pa.R.Crim.P. 720(B)(3)(a). However, the Clerk of Courts did not enter an order accomplishing this action until July 13, 2020. We have held that a court breakdown occurs when the trial court clerk fails to timely enter an order denying post-sentence motions as a matter of law pursuant to Pa.R.Crim.P 720(B)(3)(c). **See Commonwealth v. Patterson**, 940 A.2d 493, 498-99 (Pa. Super. 2007). This appeal, filed August 3, 2020, is therefore timely.

asserts that it was consensual. The complainant, however, testified that McCourt raped her after getting her alone in his camper under the guise of showing her to the restroom. It is largely undisputed that following the intercourse, the complainant ran back to McCourt's friends, and informed them she had been raped. McCourt's friends did not react and she called the police. The dispatcher directed her to drive to the State Police barracks, where an officer met her and took her to the hospital for a rape kit examination. At trial, McCourt's defense of consent centered around his contention that the complainant consented to sex with him and then fabricated a rape allegation when she thought her significant other might find out.

McCourt raises three challenges on appeal. First, McCourt contends that the trial court erred in denying his motion *in limine* to admit the complainant's social media posts to impeach her credibility. Next, McCourt argues that the trial court erred by denying the defense request for a missing evidence jury instruction to account for the lack of the audio of the 911 call made by the complainant and the video footage of her entering the State Police barracks. Finally, McCourt challenges the sexual offender registration requirements as applied to him under Subchapter H of the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. § 9799.10-9799.42, as violating due process and his right to reputation. We will address these claims in order.

McCourt first argues that the trial court erred in precluding photographs the complainant posted on her social media account after the incident. Our

standard of review when assessing an evidentiary ruling by a trial court is deferential. *See Commonwealth v. Wallace*, 244 A.3d 1261, 1269 (Pa. Super. 2021). We will only reverse an admissibility finding when a clear abuse of discretion is present. *See id*. A mere error of judgment does not constitute an abuse of discretion. *See id*. Rather, to abuse discretion the trial court must have made an error of law or made a judgment that the record shows is manifestly unreasonable or based on bias, prejudice, ill will or partiality. *See id*.

McCourt attempted to pierce the Rape Shield with a motion *in limine* to admit photographs the victim posted to her social media account. The Rape Shield Law provides, "[e]vidence of specific instances of the alleged victim's past sexual conduct, … opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions". 18 Pa.C.S. § 3104(a). In order to offer evidence prohibited by the Rape Shield at trial, a defendant must, "file a written motion and offer of proof at the time of trial". *Id*. at (b). Then, if the trial court finds the motion and offer of proof to be sufficient it must hold an in-camera hearing and decide the relevance and admissibility of the evidence on the record. *See id*. During the in-camera hearing, the trial court conducts a balancing test weighing: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are

alternative means of proving bias or motive or to challenge credibility."
***Commonwealth v. Jerdon***, 229 A.3d 278, 285-286 (Pa. Super. 2019)
(citations omitted).

McCourt's motion *in limine* requested that the trial court allow the introduction of two social media posts. The posts in question are pictures the complainant shared on March 20, 2018, and March 22, 2018. McCourt contended in his motion that the complainant's posts, which he characterizes as "sexually provocative images of herself", could be viewed by a jury as conduct "inconsistent with a person who has been recently raped by force". Defendant's Motions *in Limine*, 1/17/2019 at 11. McCourt argued that the social media posts were relevant to the complainant's credibility and were admissible to show her conduct and state of mind following the alleged rape. ***See*** Defendant's Brief in Support of His Motions *in Limine*, 1/17/2019 at 15-16. He claimed the social media posts support his contention that she fabricated the rape allegation. ***See id***. He further argued that if the photographs were not admitted, his rights under the confrontation clause of the United States Constitution would be violated. ***See id***.

The trial court denied McCourt's motion *in limine*. ***See*** Trial Court Order, 3/7/2019. In its Pa.R.A.P. 1925(a) Opinion, the trial court explained the process by which evidence of the past sexual conduct of an alleged rape victim may be ruled admissible under the Rape Shield Law. ***See*** Trial Court Opinion, 1/6/2021 at 37-38. The trial court concluded that it did not need to proceed

to the statutorily required in-camera hearing because it found that the "proffer is insufficient on its face". *Id*. at 38. The trial court clarifies that it specifically found the photographs to be protected under the Rape Shield Law:

> The posted photographs are not relevant to show either that she had not been assaulted or that she was not acting like a person who had been assaulted. Put simply, they do not exculpate Defendant. Indeed, evidence of the photos tends to show simply that the complainant did indeed pose for and posted the photographs almost *three weeks* after the incident. In our judgment, the photos – which are of an artistic but also provocative nature – clearly represent the type of evidence prohibited by the Rape Shield Law. Accordingly, this court properly denied Defendant's motion *in limine* to admit the victim's social media posts.

*Id*. at 40.

On appeal, McCourt reiterates his argument presented in his motion *in limine*. *See* Appellant's Brief, at 3-8. He furthers his argument by claiming that not admitting the photographs into evidence violated his Sixth Amendment right to confrontation. *See id*. at 3. McCourt cites to case law supporting the fact that the Rape Shield Law must bow to a defendant's right to cross-examine their accuser and relevant evidence that shows bias or calls into question credibility cannot be excluded under it. *See id*. at 3-8. McCourt cites cases that were remanded for new trials or evidentiary hearings where appellants made claims that complainants' relationships with third parties were evidence of motive to fabricate assault allegations. *See id*. (citing *Commonwealth v. Killen*, 680 A.2d 851 (Pa. 1996), *Commonwealth v. Black*, 487 A.2d 396 (Pa. Super. 1985), *Commonwealth v. Northrip*, 945

- 5 -

A.2d 198 (Pa. Super. 2008, and ***Commonwealth v. Palmore***, 195 A.3d 291 (Pa. Super. 2018).

We agree with the trial court that these cases are distinguishable. In ***Black***, ***Northrip***, and ***Palmore***, the evidence at issue was proffered to establish that the complainant had a motive to fabricate the allegation of assault. ***See Black***, 487 A.2d at 398 (recognizing that appellant argued that evidence of the complainant's sexual relationship with her brother was necessary to establish her motive to punish appellant for separating her from her brother); ***Northrip***, 945 A.2d at 204 (concluding that evidence of the complainant's sexual relations with a third party could establish a motive to fabricate the assault charge due to complainant's fear of her "overprotective mother"); ***Palmore***, 195 A.3d at 295 (agreeing that evidence of complainants prior sexual relations could establish motive to fabricate where defendant had previously told complainant's boyfriend that she had cheated on the boyfriend).

Here, other than a passing allegation that the social media posts showed the complainant "had a motive to fabricate the allegations[,]" McCourt does not link the posts to a motive to fabricate. Appellant's Brief, at 8. Instead, his primary argument on appeal is that the posts "would have shown behavior that was inconsistent with having been violently raped just two weeks prior and it would have impeached her testimony regarding the physical and psychological[] effects that the alleged attack had on her." ***Id***., at 9. As such,

*Black*, *Northrip*, and *Palmore* do not support McCourt's argument on appeal.

Much more relevant, though ultimately still unavailing, is McCourt's reliance on *Killen*. In *Killen*, the defendant proffered evidence of sexually provocative statements made by the allegedly intoxicated complainant made in the ambulance and in the hospital immediately after she was allegedly assaulted. *See Killen*, 680 A.2d at 852-53. The Supreme Court of Pennsylvania held that the Rape Shield did not act to prohibit this evidence:

> The Rape Shield Law was not designed to exclude evidence of a victim's statements to persons which are part of and relevant to the ongoing episode in which the alleged criminal activity takes place. The fact that the statements are sexually provocative in content does not automatically bring them within the protective purview of the Rape Shield Law.
>
> Moreover, appellant did not seek admission of the complainant's provocative statements to demonstrate that complainant acted promiscuously in her past or that her reputation was such; rather, appellant sought to introduce the proffered line of evidence for the limited purpose of impeaching the complainant's credibility by demonstrating her state of mind immediately after the alleged attack.[11]
>
> [11]*See e.g.*, *Commonwealth v. Lowenberg*, 481 Pa. 244, 392 A.2d 1274 (1978) (a victim's out-of-court statement[s] demonstrating victim's state of mind are admissible).

*Id*., at 854.

*Killen* is also clearly distinguishable. The statements at issue there were uttered immediately after the alleged assault and were probative of the complainant's state of mind "during the ongoing episode in which the alleged"

assault occurred. *Id*. In contrast, the social media posts at issue here were published approximately three weeks after the alleged assault. They could not be probative of the complainant's state of mind when she initially accused McCourt of assaulting her.

McCourt focuses on language in *Killen* that opens the door to questioning how a sexual assault victim should respond to an assault: "Appellant argued that the complainant's statements made after the alleged assault were relevant to the defense theory of her fabrication of the events supporting the criminal charges against appellant since her conduct and state of mind could be fairly construed by the jury as being inconsistent with that of a person recently criminally assaulted." *Id*.

We conclude this sentence from *Killen* does not stand for the broad proposition that evidence of conduct "inconsistent with that of a person recently criminally assaulted" is admissible at trial. Indeed, the Supreme Court of Pennsylvania has recently recognized that while "some laypersons may be aware of common behaviors and responses to sexual abuse, it would be a generalization to assume that the average juror is privy to the complex psychological dynamics surrounding sexual abuse." *See Commonwealth v. Jones*, 240 A.3d 881, 891 (Pa. 2020).[2] As such, "a properly qualified expert

---

[2] *Jones* dealt specifically with sexual abuse of a minor. We see no reason that the same analysis would not apply to adult victims of sexual violence.

may testify to facts and opinions regarding specific types of victim responses and behaviors in [cases] involving sexual assaults, provided the experts do not offer opinions regarding the credibility of any witness, including the victim." *Id*., at 897.

Accordingly, the factual inference sought by McCourt here would generally only be possible in conjunction with expert evidence of how a sexual assault victim would act several weeks after the assault. McCourt did not present such evidence here. Nor do we believe that, in general, the necessary predicate expert testimony is likely to be admissible in any event, given the prohibition on opinions concerning the credibility of the victim.

Rather, we construe *Killen* to stand for the sensible proposition that evidence of the complainant's demeanor and state of mind during and immediately after an alleged sexual assault is admissible in the prosecution of that allegation. While "immediately" is not a precise adverb, trial courts have long been entrusted with addressing similar questions, for example, under the prohibition against hearsay. Whatever the limits of "immediately" may be in any given case, we have no hesitation in agreeing with the trial court here that the social media posts at issue were not published immediately after the alleged assault. McCourt's first issue on appeal merits no relief. McCourt next argues that he should have received a missing evidence instruction regarding the complainant's 911 call and video of her arriving at the State Police barracks. McCourt contends that the trial court should have instructed the jury

on missing evidence pursuant to his request at trial. *See* Appellant's Brief, at 13. McCourt argues that the standard criminal jury instruction for failure to produce a document or other tangible evidence at trial should have been given, the instruction reads:

1. There is a question about what weight, if any, you should give to the failure of [a party] [the Commonwealth] [the defendant] to produce an item of a potential evidence at this trial [identify document or tangible item].
2. If three factors are present, and there is no satisfactory explanation for a party's failure to produce an item, the jury is allowed to draw a common-sense inference that the item would have been evidence unfavorable to that party. The three necessary factors are:
   First, that the item is available to that party and not to the other;
   Second, that it appears the item contains or shows special information material to the issue; and
   Third, that the item would not be merely cumulative evidence.
3. Therefore, if you find these three factors present and there is no satisfactory explanation for the [party's] [Commonwealth's] [defendant's] failure to produce [the item], [specify item], at this trial, you may infer, if you choose to do so, that it would have been evidence unfavorable to [that party] [the Commonwealth] [the defendant].

Pa. SSJI (Crim.) §3.21B.

McCourt argues on appeal that the 911 tape and the video from the State Police barracks were available to the Commonwealth and, since they were not available at the time of trial, he is entitled to the proposed jury instruction as a remedy for the Commonwealth's failure to preserve the evidence. *See* Appellant's Brief, at 14-18. Our standard of review when assessing the denial of a jury instruction is deferential to the trial court. *See* *Commonwealth v. Sebolka*, 205 A.3d 329, 342 (Pa. Super. 2019) (citation

- 10 -

omitted). We will only reverse the denial of a jury instruction if there was an abuse of discretion or error of law. *See id*.

Prior to trial, McCourt filed an extensive Motion to Compel Discovery and included the audio of the 911 call and video of the complainant entering the State Police barracks in his requests. *See* Defendant's Motions to Compel Discovery and for Extension of Time in Which to File His Omnibus Pre-Trial Motion, at 4-5. A hearing was held on the discovery motion at which time counsel for defense and the Commonwealth agreed that the audio from the 911 no longer existed. *See* N.T., 9/13/2018, at 2. When discussing the video of the complainant entering the State Police barracks, defense counsel told the court that "to the extent that it exists" he believed it was included in discovery he received the day of the hearing. *See id*. at 4. At the conclusion of the discovery hearing, the trial court noted that the only piece of discovery that remained in dispute was Pennsylvania State Police policies and procedures that McCourt requested. *See id*. at 8. The court later ruled that the motion to compel discovery of those policies and procedures was denied. *See* Trial Court Order, 10/9/2018.

At trial, Trooper Evans, who spoke with the complainant on the phone during her 911 call and was present at the barracks when she arrived, testified regarding the audio and video evidence. *See* N.T., Jury Trial, 3/12/2019-3/14/2019 at 93-95. On cross examination, defense counsel asked Trooper Evans if he knew where the audio of the 911 call and the video of the

complainant entering the barracks was kept. *See id*. at 101-104. Troops Evans responded that he did not know where those recordings were located. *See id*.

At the charging conference following trial, defense counsel requested the jury be charged on missing evidence. *See id*. at 415. The Commonwealth asserted that the 911 call and video did not exist as they were automatically recorded over and that Trooper Franchella, who was also involved in the investigation, if asked about this, would have been able to explain the process. *See id*. at 415-416. The trial court decided that, based on the record, the instruction would not be given. *See id*. at 417.

In order to assign error to an omitted jury instruction, a specific objection must be made outside of the presence of the jury before deliberations begin. *See* Pa.R.Crim.P. 647(C). Requesting a jury instruction, but then failing to object when the trial court does not charge that instruction waives a challenge to the omission of the instruction on appeal. *See Commonwealth v. Janda*, 14 A.3d 147, 163 (Pa. Super. 2011). After the trial court denied defense counsel's request for a missing evidence jury instruction and charged the jury, no objection was made. *See* N.T., Jury Trial, 3/12/2019-3/14/2019, at 486. Arguably, McCourt has waived this issue on appeal. Even if the issue is not waived, however, we conclude it has no merit.

Here, the trial court found that the evidence no longer existed when McCourt requested it. Further, McCourt has not established that the Commonwealth had any duty to preserve it prior to the request. McCourt has failed to establish that these recordings held any information that was relevant to the issue of whether the complainant had been sexually assaulted. Accordingly, we conclude McCourt's second issue on appeal merits no relief.

Finally, McCourt presents a claim relating to his reporting and registration requirements under SORNA. McCourt argues that the trial court violated his right to reputation under the Pennsylvania Constitution by designating him as a Tier III sex offender and requiring him to register for life. *See* Appellant's Brief at 18-19. McCourt requests that we "reverse and remand for an individualized hearing on whether the irrebuttable presumption of dangerousness provided by SORNA violates Appellant's rights". *Id*. at 19.

McCourt relies on ***Commonwealth v. Muhammad*** to support his argument. ***See id***., 241 A.3d 1149 (Pa. Super. 2020). In ***Muhammad***, the defendant was convicted of interference with the custody of children and related charges and was designated as a Tier I offender under SORNA. ***See id***. at 1151. We vacated the order requiring her to register as a sexual offender because we found that SORNA created an unconstitutional irrebuttable presumption as applied to her specifically, based on the nature of the crime and her history. ***See id***. at 1157-1160. We do not find ***Muhammad*** analogous to the instant case. McCourt was convicted of sexual offenses and instead, we

find guidance regarding his SORNA requirements in *Commonwealth v. Torsilieri*. 232 A.3d 567 (Pa. 2020).

In *Torsilieri*, the Pennsylvania Supreme Court addressed Revised Subchapter H of SORNA. *See id*. at 581. The Court found that Torsilieri's challenges to the legislature's assumptions that all sexual offenders have a high risk of re-offending and that the tier-based registration scheme protects the public from sexual offenders re-offending were valid constitutional questions. *See id*. at 584. Ultimately, the Court remanded the case to the trial court so that both sides could develop arguments on whether the irrebuttable presumption raised by SORNA applied to the defendant. *See id*. at 596. The *Torsilieri* appeal was pending when McCourt was sentenced. However, McCourt brought *Torsilieri* to the trial court's attention prior to sentencing. *See* Defendant's Sentencing Memorandum, 9/3/2019.

We find that, like Torsilieri, McCourt was not given the benefit of an individualized hearing to determine whether the irrebuttable presumptions of SORNA are constitutional as applied to him. Consequently, we remand for the purpose of such hearing. We affirm regarding all other aspects of the sentence and find no merit in any of the other claims on appeal.

Judgment of sentence affirmed. Case remanded for a hearing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2021