J-S43028-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MATTHEW WILLIAM HAAPALA | |
| Appellant | No. 258 WDA 2020 |

Appeal from the PCRA Order Entered February 10, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0001086-2016

BEFORE:   SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                    FILED JANUARY 25, 2021

Appellant, Matthew William Haapala, appeals from an order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  Appellant was sentenced to an aggregate term of five years' probation and ordered to register as a sex offender following his guilty plea to indecent assault, simple assault, criminal mischief and defiant trespass.[1] Appellant argues, inter alia, that trial counsel was ineffective by failing to ensure that Appellant's plea was knowing, voluntary, and intelligent.  We vacate the PCRA order to the extent it denies Appellant's challenges to the constitutionality of Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10—9799.42, and we remand for further proceedings on these challenges.  We affirm in all other regards.

_____

[1] 18 Pa.C.S.A. §§ 3126, 2701, 3304, and 3503, respectively.

The facts underlying Appellant's guilty plea are as follows:

[T]he Commonwealth would have called Lynn Geramita . . . and Dawn Lee Morrison[,] who would have testified that on or about December 29th of 2015, [Appellant] entered the Dollar Tree Store on McKnight Road in Allegheny County and tried to access the fire alarm system in the back. Miss Geramita, who is an employee of the store, approached him and thinking he was there to work on the alarm system asked for his work ID. He said "shh" multiple times and finally forced her to the ground with both hands by her shoulders, jumped on top of her, grabbed her face and stuck his tongue in her mouth. She was able to push him back and scream for help. Bystanders pulled him off her.

She ran to the [offices], along with Dawn Morrison, in order to be safe. When they had seen him leave, Miss Morrison went back into the store only to see [Appellant] run back in and come towards her. He put her in a chokehold and stuck his fingers in her mouth. She was able to get away and was exiting the store as police arrived. The fire alarm had been ripped off the wall and [Appellant] was sitting at the training computer at the back of the store when the police took him into custody.

N.T., 6/29/16, at 5-6 (prosecutor's summary).

The Commonwealth charged Appellant with two counts of indecent assault by forcible compulsion, two counts of simple assault, one count of criminal mischief—tampering with property and one count of defiant trespass. On June 29, 2016, Appellant appeared with counsel before the court to enter a negotiated guilty plea. Appellant completed an eleven—page Guilty Plea Explanation of Defendant's Rights form and entered a negotiated plea of guilty. The prosecutor stated that the parties agreed to a sentence of a probationary period to be set by the court and no contact with the victims. The court conducted an oral colloquy on the record, accepted the negotiated

guilty plea, and sentenced Appellant to an aggregate of five years' probation. The court ordered Appellant to register for life as a sex offender based on his convictions for indecent assault.

Appellant did not file a direct appeal. On June 27, 2017, Appellant timely filed a pro se PCRA petition, and he later filed an amended PCRA petition through counsel. On January 4, 2020, the court entered a notice of intent to dismiss the petition without a hearing. On February 10, 2020, the court entered an order dismissing the petition. Appellant filed a timely notice of appeal. The PCRA court did not file a Pa.R.A.P. 1925 opinion or direct Appellant to file a Pa.R.A.P. 1925(b) statement. Instead, the PCRA court adequately explained its reasons for denying relief in its notice of intent to dismiss the petition.

Appellant raises the following issues in this appeal:

I. Are [Appellant]'s claims for relief are properly cognizable under the [PCRA]?

II. Did the lower court abuse its discretion in denying the PCRA petition, as amended, without a hearing insofar as [Appellant] established the merits of the claim that the guilty pleas to all of the charges were not knowing, intelligent and voluntary; and trial counsel was ineffective for allowing [Appellant] to enter unknowing, unintelligent, and involuntary guilty pleas to the charges; for failing to object to the invalid guilty pleas; and for failing to move to withdraw the invalid guilty pleas?

III. Should [Appellant] not be subject to the registration requirements and restrictions under Act 10 of 2018, insofar as the act is punitive, unlawful and unconstitutional because it requires a defendant to register for 25 years for a first degree misdemeanor that carries a maximum penalty of five years' imprisonment, it is based solely on the possibility of future

dangerousness, and it is manifestly in excess of what is needed to ensure compliance with the law?

Appellant's Brief at 5.

In the first section of his brief, Appellant raises three arguments for the proposition that trial counsel was ineffective for permitting him to enter a guilty plea. Our standard of review for such arguments is well-settled:

> We review an order granting or denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. We will not disturb the findings of the PCRA court unless there is no support for those findings in the record.
>
> ...
>
> In reviewing ineffective assistance of counsel claims, we presume counsel is effective. To overcome this presumption, a PCRA petitioner must show the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner. Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different. A claim will be denied if the petitioner fails to meet any one of these prongs.
>
> A criminal defendant's right to effective counsel extends to the plea process, as well as during trial.
>
> Under the PCRA, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the petitioner to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.
>
> To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. This is not a stringent requirement. The reasonable probability test

refers to a probability sufficient to undermine confidence in the outcome.

Commonwealth v. Brown, 235 A.3d 387, 391 (Pa. Super. 2020) (citations omitted and minor stylistic revisions). In addition,

> the standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, . . . under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea.

Commonwealth v. Kelley, 136 A.3d 1007, 1013 (Pa. Super. 2016).

A valid guilty plea must be knowingly, voluntarily and intelligently entered. Id. The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether the defendant is aware of his rights and the consequences of his plea. Id. The court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the court is not bound by the terms of the agreement unless the court accepts the agreement. Id. This Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. Id.

In this context, it is important to remember that "a defendant is bound by the statements which he makes during his plea colloquy." Commonwealth v. Jabbie, 200 A.3d 500, 506 (Pa. Super. 2018). Therefore, a defendant "may not assert grounds for withdrawing the plea that contradict statements made when he pled guilty," and he may not recant the representations he made in court when he entered his guilty plea. Id.

We turn to Appellant's specific arguments. First, Appellant asserts that his guilty plea was not knowing, voluntary or intelligent, because counsel failed to explain the elements of the charges to him. According to Appellant, counsel failed to

> ensure that he understood that in order to be adjudged guilty of the crime of indecent assault under 18 Pa.C.S.[A.] § 3126(a), he was required to have the specific intent of arousing sexual desire in the himself or the complainant; and to be adjudged guilty of the crime of simple assault under 18 Pa.C.S.[A.] § 2701(a)(1), he was required to have the specific intent to cause bodily injury; and to be adjudged guilty of criminal mischief under 18 Pa.C.S.[A.] § 3304(a)(2), he was required to have acted intentionally or recklessly so as to endanger persons or property; and to be adjudged guilty of defiant trespass under 18 Pa.C.S.[A.] § 3503(b)(1)(i), he was required to know he was not licensed or privileged to be in a place after receiving notice of trespass.

Appellant's Brief at 14-15.

This Court has comprehensively explained that "where the totality of the circumstances establishes that a defendant was aware of the nature of the charges, the plea court's failure to delineate the elements of the crimes at the oral colloquy, standing alone, will not invalidate an otherwise knowing and voluntary guilty plea." Commonwealth v. Morrison, 878 A.2d 102, 107 (Pa.

- 6 -

Super. 2005) (collecting cases). "Whether notice [of the nature of the charges] has been adequately imparted may be determined from the totality of the circumstances attendant upon the plea [.]" Id. To determine whether the defendant has received proper notice, we should take into account any written form in the record that the defendant reads, completes, and signs as well as the oral colloquy during the guilty plea hearing. Id. at 108.

The record establishes that Appellant received a detailed, written guilty plea form, reviewed the form with counsel, answered 68 questions on the form, initialed each page and wrote his signature at the conclusion of the questionnaire. Guilty Plea Form, 6/29/16. He initialed the first page, which instructed that "you must fully understand that your plea must be voluntary" and "by pleading guilty to any charge, you are admitting that you committed that offense." Id. Question 6 inquired, "Have you discussed with your attorney the elements of each charged offense?" Appellant wrote, "Yes." Id. Question 7 inquired, "Have you discussed with your attorney the factual basis of each charged offense?" Appellant answered, "Yes." Id. Question 8 inquired, "Have you discussed with your attorney how the facts in your case prove the elements of each charged offense?" Appellant answered, "Yes." Id.

Furthermore, during his guilty plea hearing, the following colloquy took place while Appellant was under oath:

> THE COURT: Have you had enough time to speak with your attorney [Mr. Dilucente] about the elements of each crime to which you are pleading guilty, the maximum penalty allowed by law, and your right to have a trial in this case?

[APPELLANT]: Yes.

THE COURT: Are you satisfied with his representation?

[APPELLANT]: Yes.

THE COURT: I have in front of me a guilty plea colloquy that bears your signature as well as the signature of your attorney. Did you read and understand these questions, sir?

[APPELLANT]: Yes.

THE COURT: Did you answer these questions honestly?

[APPELLANT]: Yes.

THE COURT: Was your attorney available in the event you had a question about this document or any matter related to this case?

[APPELLANT]: Yes.

THE COURT: Mr. Dilucente, based on your experience and your contact with Mr. Haapala, do you believe he understands the elements of the crime, the maximum penalties allowed by law, and that he is otherwise making a knowing, intelligent, and voluntary decision to plead guilty?

MR. DILUCENTE: Yes, I do.

Guilty Plea/Sentencing Transcript, 6/29/16, at 3-4.

In addition, on the date of the guilty plea hearing, Appellant signed an acknowledgement in the criminal information that he was "plead[ing] guilty to the [proffered] charges in the within information." Information at 1. The second and third pages of the information listed the elements of each offense.

Viewed together, Appellant's representations on the guilty plea form and information and his testimony at the guilty plea hearing demonstrate that he

understood the elements of all charges to which he was pleading guilty. Morrison, 878 A.2d at 107. His present claim that he did not understand various elements in the charges, and that counsel failed to ensure that he understood these elements, constitutes a disavowal of his testimony during the oral guilty plea colloquy and his representations on the guilty plea form and information. The law prohibits this tactic. Jabbie, 200 A.3d at 506. Appellant's claim that he did not receive proper notice of the elements of the charges is devoid of merit.

Next, Appellant argues that counsel was ineffective for failing to stop him from pleading guilty because no factual basis existed for the charges. We disagree.

While there is a "strong preference for a dialogue in colloquies with meaningful participation by the defendant throughout, there is no set manner, and no fixed terms, by which factual basis [for a guilty plea] must be adduced." Commonwealth v. Flanagan, 854 A.2d 489, 500 (2004). Here, the factual basis for Appellant's plea was adduced by the prosecutor's summary of the facts during the guilty plea colloquy in open court. Appellant and his attorney heard the summary and did not object to its substance. The facts articulated by the prosecutor established Appellant's guilt on all charges.

Appellant pleaded guilty to two counts of indecent assault. Indecent assault occurs when a defendant "has indecent contact with the complainant [or] causes the complainant to have indecent contact with the person for the

purpose of arousing sexual desire in the person or the complainant and . . . the person does so by forcible compulsion." 18 Pa.C.S.A. § 3126. Appellant contends that there is no factual basis that he had contact with the victims in the store for the purpose of arousing sexual desire in himself or the two victims. The prosecutor, however, described that Appellant (1) pushed one victim to the floor and forced his tongue into her mouth and (2) placed his second victim in a chokehold and inserted his fingers into her mouth. By pleading guilty, Appellant "acknowledged the[se] facts and the necessary intent, regardless of the Commonwealth's ability to prove them and how it might do so." Commonwealth v. Watson, 835 A.2d 786, 798 (Pa. Super. 2003). These facts, admitted as true, clearly indicate that Appellant used his tongue and fingers for the purpose of arousing sexual desire in himself. See Commonwealth v. Capo, 727 A.2d 1126, 1128 (Pa. Super. 1999) (evidence sufficient to support conviction for indecent assault; as minor victim was walking away, defendant forcibly grabbed victim by upper arm, repeating that he was not finished with her sketch, and as victim struggled to free herself from his grip, defendant attempted to kiss victim on the mouth, reaching only her face and neck, and after defendant freed one of victim's arms, defendant rubbed victim's shoulders, back, and stomach until she was able to pull away).

Appellant also pleaded guilty to two counts of simple assault, which occurs when, inter alia, the defendant "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. §

2701(a)(1). Appellant's attacks fulfilled both of these subsections. His acts of pushing the first victim to the ground and attempting to stick his tongue in her mouth were attempts to cause bodily injury, as were his acts of placing the second victim in a chokehold and sticking his fingers in her mouth.

Appellant pleaded guilty to one count of criminal mischief, which occurs when the defendant "intentionally or recklessly tampers with tangible property of another so as to endanger person or property." 18 Pa.C.S.A. § 3304(a)(2). The prosecutor's summary demonstrates that Appellant tampered with the store's fire alarm, going so far as to rip the fire alarm from the wall.

Finally, Appellant pleaded guilty to one count of defiant trespass, which takes place when the defendant, "knowing that he is not licensed or privileged to do so . . . enters or remains in any place as to which notice against trespass is given by . . . actual communication to the actor." 18 Pa.C.S.A. § 3503(b)(1)(i). The prosecutor's summary establishes that Appellant remained in the back of the store at the fire alarm after the first victim asked him for work identification (which he did not have). He said "shh" multiple times and attacked the first victim. These facts indicate that Appellant knew he was not privileged to be in that area of the store yet remained there when the first victim put him on notice of his trespass by asking him for work identification.

In short, the record establishes a factual basis for each charge to which Appellant pleaded guilty.

Next, Appellant argues that defense counsel was ineffective for failing to investigate whether Appellant was legally insane at the time of the incident, discuss the possibility of this defense with Appellant, or present expert testimony that Appellant was insane. We disagree. The record demonstrates that defense counsel sent Appellant to a mental health professional, Shannon Edwards, for evaluation prior to the guilty plea hearing. N.T., 6/29/16, at 10. Moreover, Appellant's written guilty plea form asked the following questions:

> Do you understand that by pleading guilty, you also give up the right to present or assert any defenses on your behalf?
>
> These defenses might include alibi, self-defense, mental infirmity, or insanity. Have you discussed with your attorney why these defenses are not available in your case?

Guilty Plea Form, Question 26. Appellant responded to both questions by writing "yes" in the space provided, and initialed the page after answering. Id. During the guilty plea hearing, the court asked whether Appellant read and understood the questions on Guilty Plea Form and whether he answered these questions honestly. Appellant answered "yes" to both questions. N.T., 6/29/16, at 4. Thus, the Guilty Plea Form and the colloquy during Appellant's hearing belies his claim that counsel never discussed the possibility of a mental infirmity or insanity defense. Appellant cannot disavow his representations that he elected to forego an insanity defense after discussing this issue with his attorney. Jabbie, 200 A.3d at 506 (defendant is bound by statements he makes at guilty plea hearing; he may not later assert grounds

- 12 -

for withdrawing plea that contradict statements made when he pled guilty or recant representations he made in court).

In the second section of his brief, Appellant raises challenges to the constitutionality of the order requiring him to register as a sex offender under revised Subchapter H of the Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10—9799.42,[2] as a Tier I offender. Appellant argues that (1) SORNA, as a penal law, violates the separation of powers doctrine because it usurps the judiciary's function to impose sentence, (2) SORNA is unconstitutional on its face because it creates an irrebuttable presumption that all sexual offenders are dangerous and pose a high risk of recidivation, and (3) SORNA is unconstitutional because it constitutes cruel and unusual punishment.

At the outset, we observe that it is permissible for Appellant to challenge SORNA in a PCRA petition, although the PCRA is not the exclusive method for challenging sexual offender registration statutes. Commonwealth v.

_____

[2] SORNA was enacted in 2011 and became effective on December 20, 2012. Through Acts 10 and 29 of 2018, the General Assembly split Subchapter H of SORNA into a Revised Subchapter H and Subchapter I. Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. See 42 Pa.C.S.A. §§ 9799.51-9799.75. Revised Subchapter H, which applies to offenders such as Appellant who committed an offense on or after December 20, 2012, contains stricter requirements than Subchapter I. See 42 Pa.C.S.A. §§ 9799.10-9799.42. All references to "SORNA" in this opinion are to Revised Subchapter H. For an exhaustive summary of SORNA's legislative history, see Commonwealth v. Mickley, 240 A.3d 957, 958 n.3 (Pa. Super. 2020).

Lacombe, 234 A.3d 602, 617-18 (Pa. 2020) (rejecting Commonwealth's argument that PCRA is the sole procedural mechanism available for challenging SORNA; noting that courts have entertained challenges to SORNA on direct appeal, in PCRA petitions, or in other types of petitions).

Mickley teaches that the proper remedy is to remand for an evidentiary hearing on Appellant's challenges to SORNA. In Mickley, this Court observed that the defendant's constitutional challenges to revised subchapter H of SORNA were identical to arguments raised by the Commonwealth in Commonwealth v. Torsilieri, 232 A.3d 567 (Pa. 2020). The Torsilieri court did not reach the merits of any of the constitutional claims at issue, determining instead that the factual record was not sufficiently developed in the trial court. Torsilieri concluded that a remand was appropriate "to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting offenders' constitutional rights." Id. at 587. Based on Torsilieri, Mickley held:

> Here, despite defense counsel's attempt, no evidence was presented at the hearing on Mickley's post-sentence motion. Thus, in accordance with Torsilieri, we vacate the order denying Mickley's post-sentence motion and remand for a hearing at which the parties can present evidence for and against the relevant legislation determinations discussed above.

Id., 240 A.3d at 963; see also Commonwealth v. Asher, —A.3d—, 2020 WL 7487519, *4 (Pa. Super., Dec. 21, 2020) (citing Torsilieri and Mickley) (where defendant preserved his constitutional challenges to SORNA at sentencing and in post-sentence motions, but trial court denied relief without

- 14 -

developing any factual record, remand was proper for hearing at which parties could present evidence for and against relevant legislative determinations).

The same remedy is appropriate here. The SORNA issues raised by Appellant in his PCRA petition are the same as those raised in Torsilieri, Mickley and Asher. The PCRA court denied Appellant's petition without holding a hearing. The proper solution under these circumstances is to remand for a hearing in which the parties can present evidence relating to Appellant's SORNA arguments.[3]

For the foregoing reasons, we affirm the portion of the PCRA order denying Appellant's claims of ineffective assistance of counsel. We vacate and remand for further proceedings on Appellant's challenges to SORNA's constitutionality.

Order affirmed in part and vacated in part. Case remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

_____

[3] We note that in Commonwealth v. Muhammad, 241 A.3d 1149 (Pa. Super. 2020), this Court held that SORNA created an unconstitutional irrebuttable presumption as applied to the appellant in that appeal. Id. at 1157-60. Herein, Appellant has not raised an "as applied" challenge to SORNA's presumption, i.e., an argument that SORNA's presumption is unconstitutional under the unique circumstances of his case. Instead, he makes the same broad facial challenge to SORNA as the defendants in Torsilieri and Mickley, that is, an argument that SORNA's presumption is unconstitutional on its face as to all defendants. Accordingly, our decision in Muhammad does not govern this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  1/25/2021