# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R.C.,                                          :
                    Petitioner          :
                                 :
         v.                              :     No. 223 M.D. 2019
                                 :     Argued: February 8, 2021
Commissioner of the Pennsylvania      :
State Police, Robert Evanchick,       :
                Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE J. ANDREW CROMPTON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: March 17, 2021**


      Presently before the Court are Preliminary Objections (POs) in the nature of demurrers filed by the Commissioner of the Pennsylvania State Police, Robert Evanchick (PSP), to the Amended Petition for Review (Amended Petition) in the nature of mandamus and declaratory relief filed by R.C. (Petitioner) in our original jurisdiction. Petitioner avers that the irrebuttable presumption that sexual offenders pose a high risk of recidivism[1] and the internet registration notification system in the most recent enactment of the Sexual Offender Registration and Notification Act, Act

---

[1] The General Assembly declared that "[s]exual offenders pose a high risk of committing additional sexual offenses . . . ." Section 9799.11(a)(4) of the Act of February 21, 2018, P.L. 27, No. 10, *as amended* by the Act of June 12, 2018, P.L. 140, No. 29, 42 Pa.C.S. § 9799.11(a)(4).

of February 21, 2018, P.L. 27, No. 10 (Act 10), 42 Pa.C.S. §§ 9799.10-9799.75, *as amended* by the Act of June 12, 2018, P.L. 140, No. 29 (Act 29) (collectively, Act 29),[2] violate procedural and substantive due process and that Act 29 violates his right to reputation under article I, section 1 of the Pennsylvania Constitution without due process.[3] Upon review, we overrule PSP's POs and order PSP to file an answer to Petitioner's Amended Petition.

## I. Background

Petitioner avers the following, as was set forth in *R.C. v. Commissioner of the Pennsylvania State Police, Robert Evanchick* (Pa. Cmwlth., No. 223 M.D. 2019, filed December 5, 2019) (*R.C. I*). In *R.C. I*, Petitioner was challenging the previous

---

[2] The parties refer to Acts 10 and 29 alternatively as Acts 10/29 and Act 29. For clarity, we will refer to them as Act 29. Act 29 was enacted in response to the Supreme Court's decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), wherein the Supreme Court determined that the Sexual Offender Registration and Notification Act (SORNA), *formerly* 42 Pa.C.S. §§ 9799.10-9799.41, violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. 42 Pa.C.S. § 9799.51(b)(4). With Act 29, the General Assembly modified subchapter H to address registration requirements for individuals who committed offenses on or after December 20, 2012, the effective date for SORNA, for which the individual was convicted. *See* 42 Pa.C.S. § 9799.11(c). Through subchapter I, the General Assembly also created new registration requirements for individuals who committed offenses between April 22, 1996, and December 20, 2012, whose registration periods had not expired, and offenders who were required to register under a pre-SORNA statute between April 22, 1996, and December 20, 2012, whose registration had not yet expired. *See* 42 Pa.C.S. § 9799.52. It is undisputed that subchapter I is the applicable subchapter in Petitioner's case.

[3] While Petitioner's Amended Petition refers to article I, section 9 of the Pennsylvania Constitution, it is clear from the allegations and arguments that Petitioner meant to refer to the right to reputation as protected by the Pennsylvania due process clause in article I, section 1. Article I, section 1 of the Pennsylvania Constitution, Pennsylvania's due process clause, provides, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, **possessing and protecting** property and **reputation**, and of pursuing their own happiness." PA. CONST. art. I, § 1 (emphasis added).

iteration of the Sexual Offender Registration and Notification Act (SORNA), *formerly* 42 Pa.C.S. §§ 9799.10-9799.41.  There, we explained as follows:

> Petitioner was convicted on August 3, 2001, of involuntary deviate sexual intercourse and "related offenses" for an incident occurring on October 24, 2000.  (Petition [(Pet.)] ¶ 5.)  Petitioner was released from custody in 2007, completed serving his entire sentence in 2011, and is no longer under court supervision.  PSP notified Petitioner in December 2012 that he was required to comply with SORNA.  Following that, Petitioner filed a petition for review with this Court in April 2013, averring that SORNA was an *ex post facto* punishment and seeking injunctive relief.  This Court denied that relief with one exception, and the Supreme Court affirmed.  *Coppolino v. Noonan*, 102 A.3d 1254 (Pa. Cmwlth. 2014), *aff'd*, 124 A.3d 1196 (Pa. 2015).  The Supreme Court's subsequent decision in [*Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017)] was directly contrary to *Coppolino*.  Accordingly, Petitioner filed another petition for review with this Court in October 2017[, which was docketed with this Court at 457 M.D. 2017.] . . . [Petitioner discontinued this petition] in February 2018 after receiving notice from PSP that it was removing Petitioner's name from the list of SORNA registrants.  However, PSP [then] notified Petitioner that it [was] [] resuming its enforcement of the registration requirement against Petitioner under Act [29].

*R.C. I*, slip op. at 2-3.

Petitioner then filed another petition for review with this Court, requesting declaratory and mandamus relief and arguing that this enforcement was "without due process and without just cause" and illegally punitive as applied to Petitioner. (Pet. ¶ 4.)  PSP filed POs in the nature of demurrers, but because there existed, at that time, pending litigation as to the punitive effect of Act 29, if any, before the Supreme Court in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), this Court overruled PSP's POs with respect to Petitioner's *ex post facto* claim that Act 29 was punitive.  *R.C. I*, slip op. at 19.  We also overruled the POs with respect to PSP's claim that mandamus was not proper, but we sustained PSP's POs as to Petitioner's

claim that Act 29 did not apply to him. *Id.* Finally, we sustained PSP's POs with respect to Petitioner's due process claim but granted Petitioner leave to amend his Petition to develop his due process claims. *Id.*

In his Amended Petition,[4] Petitioner now requests declaratory and injunctive relief and asserts "that he has a federal and state constitutional right, as a matter of due process of law, to his reputation and to preserve the same in his community, and that Act 29 . . . constitutes a substantive and procedural deprivation of his right to due process of law." (Amended Petition (Am. Pet.) ¶ 14.) Focusing on his procedural claim, Petitioner "submits that his right to procedural due process has been abridged by [Act 29's] irrebuttable presumption that all sex offenders [pose] a high risk of reoffending." (*Id.* ¶ 14(e).) Most retroactive registrants, Petitioner avers, pose "no higher risk to commit a future sexual crime than people not currently on the [sex offender registry (]Registry[)]" and "that the Registry fails to achieve its purpose of protecting the public and likely makes residents of the Commonwealth of Pennsylvania less safe." (*Id.* ¶ 14(a), (b).) Additionally, Act 29, Petitioner alleges, imposes "progressively rigid conditions" that "label a broad number of people as high risk recidivists" and "leaves . . . Petitioner without any reasonable means of proving that he is not worthy of such monitoring and supervision . . . thereby further depriving him of procedural due process of law." (*Id.* ¶ 14(f).)

Petitioner further avers "that the public distribution of his personal information on the global internet website" and Act 29's "internet notification provisions and . . . irrebuttable presumption . . . violate [] Petitioner's right to substantive due process of law." (*Id.* ¶ 14(c), (d).) Finally, Petitioner "contends that

---

[4] In his Amended Petition, it appears that Petitioner incorporates the factual averments from his original petition for review, as the paragraph numbering begins at 14, sequentially following the final paragraph from his original Petition.

4

[Act 29] infringes upon his constitutionally protected reputational interests" under article I, section 1 of the Pennsylvania Constitution "because this law is not narrowly tailored to advance a compelling state interest." (*Id*. ¶ 15.) Petitioner requests that this Court "grant him the declaratory and injunctive relief requested in his original Petition for Review," (Am. Pet., Wherefore Clause), which is to "direct [PSP] to remove [Petitioner's] name from the list of offenders required to comply with the provisions of [Act 29]," (Pet., Wherefore Clause).

In response to Petitioner's Amended Petition, PSP filed POs in the nature of demurrers. PSP's first demurrer challenges Petitioner's claim, as set forth in paragraph 14(e) of the Amended Petition, that Act 29's irrebuttable presumption that sex offenders pose a high risk of recidivism violates procedural due process. PSP argues that Petitioner's claim should fail because the irrebuttable presumption doctrine is not applicable here or, in the alternative, that Petitioner cannot satisfy the doctrine's three-part analysis. PSP's next demurrer challenges Petitioner's claim, as set forth in paragraph 14(d) of the Amended Petition, that the public distribution of his personal information on the internet violates substantive due process. PSP argues that substantive due process is not the proper analytical framework to address Petitioner's claims and that his right to reputation was not infringed because the challenged provisions survive under either intermediate scrutiny, which PSP argues applies under these circumstances, or strict scrutiny. PSP's final demurrer challenges Petitioner's requested injunctive relief that his name be removed from the Registry. PSP argues that Petitioner is under an independent federal obligation to register as a sex offender, and, therefore, "mandamus relief [is] a futile exercise." (POs ¶ 48.) We note that PSP has not specifically challenged Petitioner's claims in his Amended Petition that Act 29's internet notification provisions and irrebuttable

5

presumption violate substantive due process or that Act 29 violates article I, section 1 of the Pennsylvania Constitution, which protects the right to reputation. (*See* Am. Pet. ¶¶ 14(c), 15.)

In Petitioner's Answer, he argues that this Court should overrule PSP's POs because he has stated a claim upon which relief could be granted, and, taking his allegations regarding his right to reputation as true, this claim is properly before this Court.

## II. Discussion

When ruling on POs in the nature of a demurrer, this Court must "accept as true all well-pleaded material allegations" in the Amended Petition and any inferences that can be drawn therefrom, but we are not required to accept as true legal conclusions, unwarranted factual inferences, argumentative allegations, or expressions of opinions. *Armstrong Cnty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013). Because sustaining a demurrer results in the dismissal of a petition, POs "in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim upon which relief may be granted." *Bell v. Twp. of Spring Brook*, 30 A.3d 554, 557 n.7 (Pa. Cmwlth. 2011). Any doubt as to whether the POs should be sustained must be resolved in favor of overruling them. *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006). With these standards in mind, we turn to PSP's POs.

### A. Irrebuttable Presumption Doctrine under Due Process
1. Parties' Arguments

PSP's first demurrer challenges Petitioner's due process claim as to Act 29's irrebuttable presumption that sex offenders pose a high risk of reoffending. PSP

6

contends that Petitioner's due process rights have not been violated because Act 29 does "not implicate the [i]rrebuttable [p]resumption [d]octrine." (POs ¶ 8; PSP's Brief (Br.) at 4.) "The first step in any due process analysis," PSP submits, "is to determine whether an interest that is protected by due process is involved at all." (POs ¶ 9 (citing *Am. Mfrs. Mut Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)).) "If so, the next question is whether the presumption is not universally true, and, finally, whether reasonable alternative means exist for ascertaining the presumed fact." (*Id.* ¶ 10 (citing *In re J.B.*, 107 A.3d 1, 15-16 (Pa. 2014)).) PSP asserts that Petitioner's pleadings are legally insufficient to establish any of these elements.

PSP argues that, under *Connecticut Department of Safety v. Doe*, 538 U.S. 1, 7 (2003), the first element is not satisfied. PSP asserts no due process rights are implicated here because "[d]ue process does not entitle [a petitioner] to a hearing to establish a fact that is not material under the [] statute," (POs ¶ 14), and compliance under Act 29's registration and notification requirements is "not based upon an individualized assessment of the continuing dangerousness of any particular sex offender or how likely they are to reoffend," (*id.* ¶ 15 (quotations omitted)). PSP submits that because "a sex offender's potential dangerousness is immaterial to the statutory scheme," "due process is not implicated" and "the first element of the [i]rrebuttable [p]resumption [d]octrine" cannot be satisfied. (*Id.* ¶ 16.) Even if due process and the irrebuttable presumption doctrine are implicated, PSP posits, the second element, "whether the presumption is universally true," is not satisfied. (*Id.* ¶ 17.) On this point, PSP argues that Petitioner's averments suggest that there is not a consensus that sexual offenders are likely to reoffend, (*id.* ¶ 19), which, PSP contends, requires "'[the courts] defer to the General Assembly's findings.'" (*Id.* ¶ 20 (quoting *Muniz*, 164 A.3d at 1217).) Finally, PSP submits that the third

element, "whether there exists reasonable alternative means of ascertaining the presumed fact," (*id*. ¶ 23), is not satisfied. PSP argues that this policy determination should be left to the General Assembly because the "judiciary is poorly equipped to make such assessments." (*Id*. ¶¶ 24-25 (citing *Tosto v. Pa. Nursing Home Loan Agency*, 331 A.2d 198, 202 (Pa. 1975)).) And, for these reasons, PSP argues "Petitioner's procedural due process challenge on the basis of an irrebuttable presumption must be dismissed." (*Id*. ¶ 26.)

In response, Petitioner asserts that "[t]he irrebuttable presumption created by Act 29 violates due process because it is not universally true and a reasonable alternative means of ascertaining that presumed fact is available." (Petitioner's Br. at 6.) Petitioner requests that this Court apply the irrebuttable presumption doctrine analysis from *J.B.* because Act 29 "brands every registrant with the same 'indelible mark of dangerousness'" that was held by the Supreme Court to be unconstitutional as applied to juveniles in that case. (*Id*. (quoting *J.B.*, 107 A.3d at 19).) According to Petitioner, "there is overwhelming evidence that relatively few people empirically assess at high risk and in fact most become almost no risk after a period of 15 years from the date of the crime." (*Id*.) Petitioner further asserts that "an individualized risk assessment would provide a reasonable alternative means to determine whether [Petitioner] presents a high risk of recidivism." (*Id*. (citing *J.B.*, 107 A.3d at 19).)

In its reply brief, PSP asserts that Petitioner's reliance on *J.B.* is misguided because "juvenile offenders are fundamentally different from adult offenders" and "have a low level of recidivism[] as compared to adult offenders . . . ." (PSP's Reply Br. at 1.) PSP posits that Petitioner's argument "ignores the findings and intent of the General Assembly," which "found that, as a cohort, adult sexual offenders are at a high risk to re-offend, and sexual offender registration laws, such as Act 29, help

8

to protect the Public from these offenders." (*Id*.) PSP asserts that "[b]ecause there is no attempt to 'predict' the likelihood of any individual offender's reoffending, there is no need for an individualized assessment." (*Id*.)

The Court directed the parties to prepare a memorandum of law discussing any effect that the Supreme Court's recent decision in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020), decided after the parties here filed their briefs, may have on our decision. In his memorandum, Petitioner emphasizes that the Supreme Court in *Torsilieri*

> acknowledged that the [d]efendant had presented "colorable constitutional challenges" through scientific research . . . and that [] remand was necessary in order to allow the parties "to present additional argument and evidence to address whether a scientific consensus has developed to overturn the legislative determinations in regard to adult sexual offenders' recidivation rates and the effectiveness of a tier-based registration and notification system as they relate to the prongs of the irrebuttable presumption doctrine."

(Petitioner's Memorandum of Law (Memo) at 3 (quoting *Torsilieri*, 232 A.3d at 587-88).) Petitioner further argues that this Court should apply the *Torsilieri* holding in a similar manner as applied in *Commonwealth v. Muhammad*, 241 A.3d 1149 (Pa. Super. 2020),[5] in that this Court should find that Act 29 creates an impermissible "stigma" that Petitioner is "a dangerous adult who is likely to commit further sexual offenses." (Petitioner's Memo at 4.) As to the reasonable alternatives element of the irrebuttable presumption doctrine, Petitioner also emphasizes that the appellant in *Muhammad* proffered two such alternatives. Therefore, Petitioner asserts, because this same stigma "of disgrace [applies to Petitioner and] profoundly affects

---

[5] In general, Superior Court decisions are not binding on this Court, but they may be offered for their persuasive value. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[Petitioner's] ability to obtain employment, education, and housing, which in turn impedes [Petitioner's] ability to function as a productive member of society," this Court should overrule PSP's POs. (*Id*. at 4-5 (quoting *Muhammad*, 241 A.3d at 1158).)

In its memorandum, PSP argues that "*Torsilieri* does not support Petitioner's arguments regarding the irrebuttable presumption doctrine." (PSP's Memo at 1.) PSP posits that, under *Torsilieri*,

> Petitioner must demonstrate either (1) a consensus of scientific evidence rebutting the presumption that sexual offenders, as a cohort, are at a high risk of reoffending (thus rebutting the General Assembly's legislative findings), or (2) the clearest proof to rebut the General Assembly's unequivocal declaration that Acts 10 and 29 are non-punitive.

(*Id*. at 2 (quotations omitted).) As to Act 29's presumption, the Supreme Court, PSP argues, "has repeatedly reaffirmed that it defers to the General Assembly's findings regarding the high rates of recidivism of adult sexual offenders as a cohort." (*Id*. at 3 (citing *Lacombe*, 234 A.3d at 625; *Muniz*, 164 A.3d at 1189).) Because of the General Assembly's findings as to this presumption and the Supreme Court's holding in *Lacombe* that Act 29 is non-punitive, the "Amended Petition necessarily fails." (*Id*. at 2-3.)

PSP additionally relies on *W.W. v. Pennsylvania State Police* (Pa. Cmwlth., No. 239 M.D. 2020, filed January 15, 2021),[6] in arguing that "the presumption that adult sex offenders as a cohort pose a higher risk of recidivism is still accepted as universally true" and that "a declaratory and mandamus petition[,] such as that

---

[6] *W.W.* is unreported, and while unreported opinions may be cited for their persuasive values, they do not constitute binding precedent. *See* Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b); Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a) (unreported opinions do not constitute binding precedent).

brought here[,]" is not the "proper mechanism for challenging that presumption." (*Id*. at 4.) Finally, PSP argues that Petitioner's reliance on *Muhammad* is misplaced because the defendant there was convicted of non-sexual offenses, and, therefore, the reasoning does not apply to Petitioner who was convicted of multiple sexual offenses. Therefore, *Muhammad* "should not serve as a basis to grant [] Petitioner relief in this mandamus petition." (*Id*. at 5).

2. Analysis

Article I, section 1 of the Pennsylvania Constitution states that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and **reputation**, and of pursuing their own happiness." PA. CONST. art. I, § 1 (emphasis added). In Pennsylvania, the right to reputation is fundamental and "cannot be abridged without compliance with state constitutional standards of due process." *Taylor v. Pa. State Police*, 132 A.3d 590, 605 (Pa. Cmwlth. 2016). Here, Petitioner claims a violation of this provision through Act 29's improper use of an irrebuttable presumption.

> The origins of the irrebuttable presumption doctrine
>
> derive[] from a series of United States Supreme Court cases in the 1970s involving statutes that infringed upon protected interests or denied benefits by utilizing presumptions that the existence of one fact was statutorily conclusive of the truth of another fact. The High Court concluded that, absent a meaningful opportunity to contest the validity of the second fact, the statutory irrebuttable presumptions deprived the citizenry of due process of law.

11

*J.B.*, 107 A.3d at 14 (collecting cases). In *Department of Transportation, Bureau of Driver Licensing v. Clayton*, 684 A.2d 1060, 1063 (Pa. 1996),[7] our Supreme Court analyzed the irrebuttable presumption doctrine under due process generally and adopted the federal framework, holding that "such irrebuttable presumptions are violative of due process where the presumption is deemed not universally true and a reasonable alternative means of ascertaining that presumed fact are available."

At issue here is the General Assembly's finding that "[s]exual offenders pose a high risk of committing additional sexual offenses . . . ." 42 Pa.C.S. § 9799.11(a)(4). Our courts have addressed, though not yet fully resolved, the issue of whether SORNA's and Act 29's presumption is an irrebuttable presumption that violates due process. As these cases guide our resolution of the parties' arguments, we begin with a review thereof.

The Supreme Court in *J.B.* examined the irrebuttable presumption doctrine as it applied to SORNA's presumption with respect to juvenile offenders and their right to reputation. In reviewing the petitioners' claims, the Court set forth the following three-element analysis: (1) "whether [petitioners] have asserted an interest protected by the due process clause that is encroached by an irrebuttable presumption[;]" (2) "whether the presumption is not universally true[;]" and (3) "whether a reasonable

---

[7] In *Clayton*, the Supreme Court stated it did not "believe it wise to pigeonhole whether an analysis of an irrebuttable presumption is solely one of substantive or procedural due process," as the United States Supreme Court cases analyzed did not "discuss[] whether the analysis being employed was strictly substantive or that of procedural due process." 684 A.2d at 1064. The Court reasoned "it may be that an analysis of such presumptions by its very nature eludes such precise cataloguing," as the presumption "is the *substance* of the statute or regulation at issue, which presumption necessarily implicates *process* given its conclusiveness." *Id.* (emphasis in original); *see Torsilieri*, 232 A.3d at 581. While Petitioner in this case asserts his claim under both procedural and substantive due process, and PSP maintains that it is properly brought only under procedural due process, we follow the Supreme Court's lead in *Clayton* and will analyze it generally under due process without pigeonholing the claim as one solely cognizable under procedural or substantive due process.

alternative means exists for ascertaining the presumed fact." *J.B.*, 107 A.3d at 15-16. Applying this framework to the facts in *J.B.*, the Court first "recognized that the right to reputation, although absent from the federal constitution, is a fundamental right under the Pennsylvania Constitution." *Id*. at 16 (collecting cases). In concluding that the petitioners had "asserted a constitutionally protected interest in their reputation that ha[d] been encroached by the use of [the] irrebuttable presumption," the Court explained that

> [w]hile a juvenile offender is provided an opportunity to be heard regarding the adjudication of delinquency for the relevant crime, the delinquency hearing does not consider the relevant question of whether the juvenile offender is at risk of reoffense. Instead, the juvenile offender is automatically designated a sexual offender solely as a result of the delinquency adjudication under [SORNA] with the attendant presumption of a high risk of reoffense.

*Id*. at 17. Because the juvenile offenders had not had the opportunity to challenge the universality element in the analysis, the Supreme Court held that the "process which eliminates consideration of the paramount factor, in this case the likelihood of committing additional sexual offenses, does not provide procedural due process, as it blocks the opportunity to be heard on the relevant issue." *Id*.

Following *J.B.*, this Court addressed an adult offender's claim that SORNA's irrebuttable presumption violated procedural due process under the Pennsylvania Constitution in *Taylor*, 132 A.3d at 590.[8] PSP filed POs arguing, as here, that the petitioner's irrebuttable presumption claim failed under *Doe* and that the petitioner could not satisfy the universality factor of the irrebuttable presumption doctrine. We overruled PSP's POs, holding that the petitioner had sufficiently alleged, through

---

[8] SORNA likewise provided the exact legislative finding as in Act 29 that "[s]exual offenders pose a high risk of committing additional sexual offenses . . . ." *Former* 42 Pa.C.S. § 9799.11(a)(4).

13

supporting studies, that the presumption was not universally true under the second element of *J.B.*'s framework. "Just as the petitioners in *J.B.* were entitled to prove their allegations with regard to recidivism rates in juvenile offenders, notwithstanding previous judicial findings to the contrary, [the p]etitioner must be afforded an opportunity to present his proof." *Id*. at 607. Furthermore, we also explained the flaw in PSP's reliance on *Doe*, 538 U.S. at 8, that petitioners "who assert a right to a hearing under the Due Process Clause[, PA. CONST. art. I, § 1,] must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Taylor*, 132 A.3d at 607. We determined that "the question of whether the facts [the petitioner] seeks to challenge are relevant to SORNA's statutory scheme is inextricably linked to the merits of [the petitioner's] claim that SORNA's irrebuttable presumption violates his procedural due process rights." *Id*. Therefore, we overruled PSP's POs and permitted the petitioner the opportunity to prove his contentions.

This Court subsequently examined this issue as it applies under Act 29 in *Cao v. Pennsylvania State Police* (Pa Cmwlth., No. 512 M.D. 2015, filed October 16, 2019). In *Cao*, the petitioner brought the same claim as Petitioner in this case, that Act 29's internet notification requirements infringe on his right to reputation and that the irrebuttable presumption violates due process. PSP filed a PO arguing that the petitioner's due process claim fails because he failed to allege an interest protected by either federal or Pennsylvania due process. This Court applied *Taylor*'s reasoning to Act 29's irrebuttable presumption and held that the petitioner had stated a colorable claim as to the irrebuttable presumption doctrine and, as such, overruled PSP's PO as to this issue, as well as overruling PSP's PO that the petitioner failed to state a claim under substantive due process.

14

As previously mentioned, our Supreme Court recently addressed this issue under Act 29 in *Torsilieri*. In *Torsilieri*, the Supreme Court considered the Commonwealth of Pennsylvania's (Commonwealth) direct appeal from a trial court's decision finding that Subchapter H of Act 29 violated due process through the use of an unconstitutional irrebuttable presumption infringing on the right of reputation.[9] The trial court had applied the three-element analysis of *J.B.* to the evidence presented and, finding all three elements satisfied, held Act 29 was unconstitutional "due to the legislature's use of the irrebuttable presumption that all sexual offenders pose a high risk of sexual recidivism." *Torsilieri*, 232 A.3d at 586.

On appeal, the Supreme Court declined to render a decision on the merits of the case and remanded for further proceedings. The Court explained that

> [g]iven the procedures leading to this point, the importance of the underlying issue, and our deference to legislative policy determinations, we decline to render a conclusion on the basis of the record before us. Instead, we conclude that **remand is necessary** to allow the parties to present additional argument and evidence to address **whether a scientific consensus has developed to overturn the legislative determinations in regard to adult sexual offenders' recidivation rates and the effectiveness of a tier-based registration and notification system as they relate to the [elements] of the irrebuttable presumption doctrine**.

*Id*. at 587-88 (emphasis added). With regard to the Commonwealth's argument that deference be given to the legislature's policy assessment, as the Supreme Court had done in *Muniz*, and the existence of conflicting studies as to sexual offenders' recidivism, the Court emphasized that

---

[9] Although Subchapter H of Act 29 applied to the petitioner in *Torsilieri*, the irrebuttable presumption that sexual offenders pose a high risk of recidivism in Subchapter H is the same as that employed in Subchapter I, which is applicable to Petitioner in the present case. Accordingly, it follows that the Supreme Court's analysis as to the irrebuttable presumption applies here.

15

all cases are evaluated on the record created in the individual case. Thus, **a court need not ignore new scientific evidence merely because a litigant in a prior case provided less convincing evidence**. Indeed, this Court will not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights.

*Torsilieri*, 232 A.3d at 595-96 (emphasis added). However, the Court also emphasized that "it will be the **rare situation** where a court would **reevaluate a legislative policy determination**, which can only be justified in a case involving the infringement of constitutional rights and a consensus of scientific evidence undermining the legislative determination." *Id.* at 596 (emphasis added). And, therefore, it cautioned that although Pennsylvania

> courts are empowered to enforce constitutional rights, they should remain mindful that "**the wisdom of a public policy is one for the legislature**, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements."

*Id.* (quoting *Shoul v. Dep't of Transp., Bureau of Driver Licensing*, 173 A.3d 669, 678 (Pa. 2017)) (emphasis added).

Nevertheless, because it was "apparent from the trial court findings" that "the evidence presented by [Torsilieri] provide[d] a colorable argument to debunk the settled view of sexual offender recidivation rates and the effectiveness of tier-based sexual offender registration systems underlying the General Assembly's findings," the Supreme Court held remand was proper to "provide both parties an opportunity to develop arguments and present additional evidence," which the trial court should weigh to determine whether Torsilieri had refuted the relevant legislative findings. *Torsilieri*, 232 A.3d at 596.

16

Following *Torsilieri*, the Superior Court has also remanded multiple cases for evidentiary hearings to address the issue of Act 29 and the irrebuttable presumption doctrine. *See Commonwealth v. Asher* (Pa. Super., No. 1133 MDA 2019, filed Dec. 21, 2020) (vacating and remanding for a hearing to present evidence for and against Act 29's legislative determination under *Torsilieri*); *Commonwealth v. King* (Pa. Super., No. 2636 EDA 2019, filed Nov. 10, 2020) (same as applied to a Subchapter I registrant); *Commonwealth v. Mickley*, 240 A.3d 957 (Pa. Super. 2020) (same). As noted by the parties, the Superior Court in *Muhammad* has also affirmed a trial court's finding, in an as-applied challenge, that Act 29's irrebuttable presumption violated due process. In that case, the Superior Court held that a remand was not necessary to address the as-applied challenge to the irrebuttable presumption because the record had been sufficiently developed to show that the **appellant had proven** that, as applied to her, Act 29's "provision that sexual offenders pose a high risk of recidivating **[was] an irrebuttable presumption** that clearly, palpably, and plainly **violates** [the a]ppellant's constitutional right to reputation." *Muhammad*, 241 A.3d at 1159 (emphasis added). Accordingly, the Superior Court granted the requested relief and vacated the order directing the appellant to register as a sex offender. PSP argues *Muhammad* is distinguishable because the petitioner was convicted of offenses that PSP describes as non-sexual. However, these offenses, while arguably not inherently sexual in nature, are qualifying offenses under Act 29 for purposes of **requiring** registration as a sexual offender. And, as such, Act 29's presumption applies to individuals convicted of those offenses in the same manner as those convicted of inherently sexual offenses. That the petitioner had the opportunity and was able to show that the presumption was not universally true, as applied to her, is the same opportunity that Petitioner here seeks.

17

From these cases, a principle has developed. Where a petitioner raises a colorable due process violation under the irrebuttable presumption doctrine, all three Pennsylvania appellate courts have concluded that the petitioner must be given the opportunity to present evidence in an effort to rebut the legislative finding with respect to an adult sexual offender's recidivation rates and the effectiveness of a tier-based registration and notification system. Applying this principle to Petitioner's allegations and PSP's POs in this case, we reach the same conclusion—Petitioner has stated a colorable claim for a violation of due process as a result of Act 29's irrebuttable presumption and must be provided the opportunity to present evidence rebutting the relevant legislative findings.

The first step in applying the irrebuttable presumption doctrine framework from *J.B.* is to determine "whether [Petitioner] ha[s] asserted an interest protected by the due process clause that is encroached by an irrebuttable presumption." *J.B.*, 107 A.3d at 15-16. Petitioner argues "that he has a . . . state constitutional right, as a matter of due process of law, to his reputation," (Am. Pet. ¶ 14), that "[i]t is well settled that a citizen of Pennsylvania has the right to protect his reputation" that "cannot be abridged without due process of law," and "that sex offender registration can substantially harm a citizen's reputation," (Petitioner's Br. at 4 (citing *J.B.*, 107 A.3d at 15-16)). Relying on *Doe*, 538 U.S. at 1, PSP argues that the irrebuttable presumption doctrine is not applicable to Petitioner because "[u]nder Act 29, a sex offender's potential dangerousness is immaterial to the statutory scheme" and, therefore, no due process rights are implicated. (POs ¶ 16.) However, PSP previously asserted this argument in *Taylor*, 132 A.3d at 607, which this Court rejected, explaining that such reliance was misplaced because "the question of whether the facts [the petitioner] seeks to challenge are relevant to SORNA's

18

statutory scheme is inextricably linked to the merits of [the petitioner's] claim that SORNA's irrebuttable presumption violates his procedural due process rights." *Id*. While *Taylor* involved SORNA, not Act 29, the **same** presumption is utilized in **both** statutes, and PSP offers no reason for treating Act 29 differently from SORNA. Moreover, it is well-settled that "reputation is among the fundamental rights that cannot be abridged without compliance with state constitutional standards of due process." *Taylor*, 132 A.3d at 605; *see also Muniz*, 164 A.3d at 1221; *J.B.*, 107 A.3d at 16 (recognizing that "the right to reputation, although absent from the federal constitution, is a fundamental right under the Pennsylvania Constitution"). Indeed, all three Pennsylvania appellate courts addressing this issue, as discussed above, have found this right implicated. Accordingly, Petitioner has asserted an interest protected by this Commonwealth's constitutional due process clause that is encroached by an irrebuttable presumption, satisfying the first element of the analysis.

Our recent opinion in *W.W.*, slip op. at 7-10, does not compel a contrary result. The Court stated that, in that case, the irrebuttable presumption doctrine and due process were not implicated by Act 29's presumption, and, in a footnote, summarily concluded that *Torsilieri* did not alter its analysis. Importantly, as the petition was filed before *Torisilieri* and its progeny had been written, the petitioner in *W.W.* alleged no factual averments as to the universality or reasonable alternative means elements that would bring it within the recent case law in order to satisfy elements of the irrebuttable presumption doctrine. Rather, the petitioner pled one conclusory sentence that the irrebuttable presumption violated due process but provided no factual support for this contention. Unlike in *W.W.*, here, Petitioner raised the issue and specifically alleged that "most retroactive registrants are no higher risk to

19

commit a future sexual crime than people not currently on the Registry." (Am. Pet. ¶ 14(a).) We believe this is enough to support a colorable claim. In its memorandum, PSP cites *W.W.* for the proposition that declaratory and mandamus relief are not the proper mechanisms in which to review this issue. We note that the Court's decision in *W.W.* was directed at a request for mandamus relief, rather than a request for declaratory and injunctive relief as is requested here. Although there is a statement in footnote seven that "in the context of a petition seeking declaratory and mandamus relief, [the petitioner] cannot establish a clear legal right [to relief,]" *W.W.*, slip op. at 10 n.7, the case cited for this proposition, *Allen v. Department of Corrections*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014), did not involve a request for declaratory relief, **only** mandamus. Because the Court in *W.W.* did not specifically analyze this issue under the standards for declaratory relief, and because Petitioner here also requests injunctive relief, the mandamus argument is not determinative. Finally, we note that this case was unreported and is therefore not binding on our decision here. Accordingly, we find that this case is distinguishable from *W.W.* on these bases.

The second step in the analysis is to determine "whether the presumption is not universally true." *J.B.*, 107 A.3d at 16. Petitioner avers that most retroactive registrants pose "no higher risk to commit a future crime than people not currently on the Registry" and that "the Registry fails to achieve its purpose of protecting the public and likely makes the residents of the Commonwealth of Pennsylvania less safe." (Am. Pet. ¶ 14(a), (b).) Petitioner further asserts that "there is overwhelming evidence that relatively few people empirically assess at high risk and in fact most become almost no risk after a period of 15 years from the date of the crime." (Petitioner's Br. at 6.) PSP argues that if Petitioner's averments are true, then there

is no consensus on the universality of the presumption in Act 29, and this Court should defer to the General Assembly's findings as to the policy determination that sexual offenders pose a high risk of recidivism.

Although our Supreme Court in *Torsilieri* cautioned that Pennsylvania courts should remain mindful that "the wisdom of a public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality," it explained that the courts' "deference to legislative determination is **not boundless**" and those determinations are "subject to the limits of the Constitution." 232 A.3d at 583 (emphasis added and quotation omitted). The Supreme Court confirmed that, while the General Assembly establishes public policy, the "courts are empowered to enforce constitutional rights" where there is "a demonstration that [the policy] clearly, plainly, and palpably violate[s] constitutional requirements." *Id.* at 596. Therefore, in arguing in its memorandum that "Petitioner cannot rebut the consensus regarding the high rate of recidivism" because Petitioner's "bald assertion" that adult sexual offenders pose no higher risk to commit a future sexual crime than others not on the Registry fails to demonstrate a consensus of scientific evidence to find the presumption not universally true, PSP misconstrues *Torsilieri*'s holding. At this stage of the proceedings, Petitioner needed not to have **proven** his case under the irrebuttable presumption doctrine, but only to have stated a **colorable** claim in order to have an **opportunity** to prove this claim. Here, like the registrants in *Taylor* and *Cao*, and similar to the registrant in *Torsilieri* and the registrants in the recent Superior Court decisions cited above, Petitioner's averments, if accepted as true, state a colorable claim as to the scientific consensus regarding Act 29's irrebuttable presumption, and Petitioner should be

21

given the opportunity to prove his contentions through scientific studies or comparable evidence that would satisfy this element of the analysis.

The third element of the analysis is to determine "whether a reasonable alternative means exists for ascertaining the presumed fact." *J.B.*, 107 A.3d at 16. Petitioner argues that "an individualized risk assessment would provide a reasonable alternative means to determine whether [Petitioner] presents a high risk of recidivism." (Petitioner's Br. at 6 (citing *J.B.*, 107 A.3d at 19).) Similar to the second element, PSP alleges that this, too, is a policy decision that should be left to the General Assembly's wisdom. However, as stated, our "deference to [the General Assembly's] legislative determination is not boundless," and the courts "will not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights." *Torsilieri*, 232 A.3d at 583, 595-96. Petitioner provides "a colorable argument to debunk the settled view of sexual offender recidivation rates and the effectiveness of tier-based sexual offender registration systems," and, therefore, should be given the opportunity to "develop arguments and present additional evidence" in support of that argument, that, if accepted as true, would satisfy the third element of the analysis. *Id*. at 595-96.

Accepting as true Petitioner's allegations regarding recidivism and the efficacy of Act 29's registration and notification system as compared to individual assessments, it cannot be said at this early procedural stage that Petitioner has clearly and without a doubt failed to state a claim upon which relief should be granted. Such doubt must be resolved in favor of overruling PSP's PO. Therefore, consistent with the holdings of the recent decisions of all three Pennsylvania courts on this issue, we overrule PSP's PO.

22

*B. Substantive Due Process*

1. <u>Parties' Arguments</u>

PSP's next demurrer challenges Petitioner's substantive due process claim that the dissemination of his information on the internet violates his fundamental right to reputation. PSP first argues that substantive due process is not the proper analytical framework to address Petitioner's claims as it should be analyzed under procedural due process. (POs ¶ 29 (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989)).) Though, "even if substantive due process were [sic] the correct analytical framework," PSP asserts, "the Petitioner's right to reputation was not unconstitutionally infringed upon." (*Id.* ¶ 30.) PSP argues that while, "[o]rdinarily, the right to reputation is fundamental under the Pennsylvania Constitution, which would suggest strict scrutiny . . . [t]he application of strict scrutiny . . . depends on [the] context . . . ." (PSP's Br. at 12 (citing *Grutter v. Bollinger*, 539 U.S. 306, 327 (2003)).) PSP then draws comparisons to the Second Amendment right to bear arms under the United States Constitution[10] as to why intermediate, rather than strict, scrutiny should apply. (*Id.*) It argues that although "[t]he Second Amendment right to bear arms is [] fundamental . . . [,] courts have held that the core right to bear arms is only enjoyed by 'law abiding, responsible citizens.'" (*Id.* (quoting *United States v. Carter*, 669 F.3d 411, 416-17 (4th Cir. 2012); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 205 (5th Cir. 2012)) (emphasis omitted).) As with the right to bear arms, PSP argues "the right to a protected reputation generally available to the law-abiding citizenry cannot be a core right to those convicted criminals who have already besmirched their reputations by their

---

[10] The Second Amendment to the United States Constitution provides, in relevant part, that "the right of the people to keep and bear Arms shall not be infringed." U.S. CONST. amend. II.

23

own actions." (PSP's Br. at 12-13.) PSP asserts that intermediate scrutiny is satisfied because there is a reasonable fit between the presumption in Act 29 and the General Assembly's asserted objective of protecting public safety. (*Id*. at 13.) In the alternative, PSP argues that "even under strict scrutiny, Act 29 is narrowly drawn to accomplish a compelling governmental interest" of protecting public safety. (*Id*. (quotations omitted).) PSP again compares the strict scrutiny analysis here with that under the right to bear arms, though admitting that "[t]his analysis has not [] yet been applied in the context of sexual offender registration and notification statutes." (*Id*. at 14.) Finally, PSP compares the right to reputation to other fundamental rights which "lose that character when applied in certain circumstances," such as the First Amendment, U.S. CONST. amend. I, right to speech and content-neutral statutes. (*Id*. at 15.)

Petitioner argues that PSP's arguments fail to address this Court's decision in *Cao*, which "overruled [PSP]'s [PO] that the [p]etitioner had failed to state a claim upon which relief could be granted because, if the [p]etitioner's averments regarding [Act 29's] effect upon his right to reputation were true, this would be a claim that could properly proceed before the Commonwealth Court." (Petitioner's Answer to POs at 2.) Petitioner further asserts "that a violation of his right to reputation requires the Court to apply . . . strict scrutiny, which requires narrow tailoring to a compelling state interest. (Petitioner's Br. at 4 (citing *Nixon v. Commonwealth*, 839 A.2d 277, 287 (Pa. 2003)).) Petitioner asks this Court to reject PSP's argument regarding any comparison to firearm restrictions in which intermediate scrutiny applies and submits that "no cases have held that intermediate scrutiny shall apply to challenges to [Act 29]." (*Id*. at 5.)

24

2. Analysis

Petitioner claims that the dissemination of his personal information to the public under Act 29 violates substantive due process. As discussed above, a person's right to reputation, while not protected by the federal constitution, is protected by the Pennsylvania Constitution. *Muniz*, 164 A.3d at 1221; *J.B.*, 107 A.3d at 16. Our Court has recognized that "reputation is among the fundamental rights that cannot be abridged without compliance with state constitutional standards of due process." *Taylor*, 132 A.3d at 605. "The substantive component of the Due Process Clause provides protection against government interference with certain fundamental rights and liberty interests." *Id.* at 608 (citing *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946 (Pa. 2004)). Where a fundamental right is implicated, "strict judicial scrutiny is applied and the statute 'may only be deemed constitutional if it is narrowly tailored to a compelling state interest.'" *Id.* at 609 (quoting *Nixon*, 839 A.2d at 287).

In *Taylor*, we explained that

> [a]n extensive review of the law has shown that courts of this Commonwealth have not specifically addressed whether SORNA's registration and notification provisions are narrowly tailored to meet the government's compelling interest in protecting the public.[] Nor have courts assessed whether the public distribution of a sexual offender's personal information on a government website violates substantive due process. Further, the United States Supreme Court has not addressed this issue. *See* [*Doe*], 538 U.S. at 8 [] (addressing Connecticut's Megan's Law[11] and "express[ing] no opinion as to whether Connecticut's Megan's Law violates principles of substantive due process").

---

[11] Conn. Gen. Stat. §§ 54-250–54-261.

25

132 A.3d at 609 (footnote omitted). Likewise, in *Cao*, this Court again recognized that the fundamental right to reputation requires adherence to due process requirements. Because courts, at that time, had not yet assessed whether Act 29's dissemination of sexual offenders' information on the internet violates due process, we overruled PSP's POs as to that issue. *Cao*, slip op. at 16.

PSP does not address these cases, particularly *Cao*, and has not pointed us to any decision addressing this issue differently. After our own review, it appears that courts have still yet to decide whether Act 29's dissemination of a registrant's information on the internet violates substantive due process. Instead, PSP presents the novel argument that we should not in these situations treat reputation as a fundamental right, subject to strict scrutiny, but should instead apply the analysis employed for violations of the right to bear arms under the Second Amendment to the United States Constitution, which, it contends, would lead to the application of intermediate scrutiny. However, as PSP concedes, "[t]his analysis has not [] yet been applied in the context of sexual offender registration and notification statutes . . . ." (PSP's Br. at 14.) This concession, and that PSP asks this Court to employ a **novel** legal analysis, belies its position that this issue is properly resolvable as a demurrer, which is granted only where it is **clear** and **without doubt** that the petitioner has failed to state a claim upon which relief may be granted. *Bell*, 30 A.3d at 557 n.7. We conclude that it is not clear and without doubt that Petitioner has failed to state a claim that Act 29's distribution of his personal information on the internet violates substantive due process. Accordingly, we overrule PSP's PO.

*C. Independent Federal Obligation*

1. Parties' Arguments

In this PO, PSP contends that, even if Petitioner is successful in challenging his registration requirements under state law, he would still have "to register as a sex offender under *federal* law, making mandamus relief a futile exercise." (POs ¶ 48 (citing *Thomas v. Blocker*, 799 F. App'x 131, 135 (3d Cir.), *cert. denied*, 141 S. Ct. 164 (2020) (emphasis in original)).) PSP argues that the federal duty to register is independent of Pennsylvania law. Petitioner responds that the federal issues are still in litigation. PSP replies that this litigation is with regard to criminal repercussions for failing to register and then crossing state lines and, therefore, the ongoing litigation has no bearing on this issue.

2. Analysis

In order to sustain a demurrer, it must be "clear[] and without [] doubt" that the petition "fail[s] to state a claim upon which relief may be granted." *Bell*, 30 A.3d at 557 n.7. Furthermore, any doubt must be resolved in favor of overruling the preliminary objections. *Pa. State Lodge*, 909 A.2d at 416. At this early procedural posture, the Court cannot sustain this PO asserting an independent federal obligation to register, particularly when PSP bases its argument upon a nonprecedential circuit court opinion interpreting a federal statute that Petitioner contends is still being litigated. Accordingly, we overrule this PO.[12]

---

[12] We interpret the Amended Petition as requesting injunctive relief, rather than mandamus relief, as PSP appears to argue. The Amended Petition is titled as "Amended Petition for Review Seeking Declaratory and Injunctive Relief," as compared to the title of the original Petition, which was couched under declaratory and mandamus relief. Therefore, it is not clear PSP's PO addresses the claims before the Court.

## III.  Conclusion

Based on the foregoing, we overrule PSP's POs.  PSP is ordered to file an answer to the claims in Petitioner's Amended Petition within 30 days.

_____
**RENÉE COHN JUBELIRER,** Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

R.C.,                                    :
                 Petitioner      :
                                 :
            v.                           :  No. 223 M.D. 2019
                                 :
Commissioner of the Pennsylvania         :
State Police, Robert Evanchick,          :
                Respondent      :

# **O R D E R**

**NOW**, March 17, 2021, the Preliminary Objections of the Commissioner of the Pennsylvania State Police, Robert Evanchick (PSP) are **OVERRULED**. The PSP is **ORDERED** to file an answer to the Amended Petition for Review within 30 days.

 

                                       _____

                                       **RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R.C.,                              :
                                   :
                Petitioner         :
                                   :
        v.                         : No. 223 M.D. 2019
                                   : Argued: February 8, 2021
Commissioner of the Pennsylvania   :
State Police, Robert Evanchick,    :
                                   :
            Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

CONCURRING OPINION
BY JUDGE WOJCIK                          FILED:  March 17, 2021


        Respectfully, I concur.  I write separately to express my concern that

the judiciary, and not the legislature, is now setting public policy regarding the risk

of recidivism.  Our Supreme Court has cautioned that

> the wisdom of a public policy is one for the legislature,
> and the General Assembly's enactments are entitled to a
> strong presumption of constitutionality rebuttable only by
> a demonstration that they clearly, plainly, and palpably
> violate constitutional requirements.

*Commonwealth v. Torsilieri*, 232 A.3d 567, 584 (Pa. 2020) (quoting *Shoul v.*

*Department of Transportation, Bureau of Driver Licensing*, 173 A.3d 669, 678 (Pa.

2017).   Although the Supreme Court noted that our "deference to legislative

determination is not boundless," the Court admonished that "it will be the *rare* situation where a court would reevaluate a legislative policy determination, which can only be justified in a case involving the infringement of constitutional rights and a consensus of scientific evidence undermining the legislative determination." *Id.* at 583, 596 (emphasis added).

The Supreme Court determined that such a rare situation had presented itself in *Torsilieri*. There, the challenger presented a colorable claim that the legislative finding that "sexual offenders pose a high risk of committing additional sexual offenses"[1] infringed on his constitutional right to reputation and that this finding was debunked by new scientific evidence. *Torsilieri*, 232 A.3d at 596. Consequently, the Supreme Court concluded that the proper remedy was a remand "to provide both parties an opportunity to develop arguments and present additional evidence" regarding the settled view of sexual offender recidivation rates and the effectiveness of tier-based sexual offender registration systems underlying the General Assembly's findings supporting the challenged registration and notification provisions. *Id.*

Since then, the courts have entertained numerous challenges to the irrebuttable presumption that adult sex offenders pose a high risk of committing additional sex offenses. Where a colorable claim was presented, our courts have afforded petitioners an opportunity to present scientific evidence to rebut the settled view of sexual offender recidivation rates and the effectiveness of tier-based sexual offender registration systems. *See, e.g.*, *Commonwealth v. Rohn* (Pa. Super., No. 1858 EDA 2019, filed February 19, 2021); *Commonwealth v. Haapala* (Pa. Super., No. 258 WDA 2020, filed January 25, 2021); *Commonwealth v. Westover* (Pa.

---

[1] *See* 42 Pa. C.S. §9799.11(a)(4).

Super., No. 2851 EDA 2019, filed January 13, 2021); *Commonwealth v. Cruz* (Pa. Super., No. 3040 EDA 2019, filed January 13, 2021); *Commonwealth v. Labar* (Pa. Super., No. 3412 EDA 2019, filed January 5, 2021); *Commonwealth v. Popovich* (Pa. Super., No. 796 MDA 2019, filed January 4, 2021); *Commonwealth v. Arrigo* (Pa. Super., No. 1014 MDA 2018, filed December 31, 2020); *Commonwealth v. Smith* (Pa. Super., No. 2456 EDA 2019, filed December 31, 2020); *Commonwealth v. Miller* (Pa. Super., No. 2513 EDA 2019, filed December 30, 2020); *Commonwealth v. Asher*, __ A.3d __ (Pa. Super., No. 1133 MDA 2019, filed December 21, 2020); *Commonwealth v. King*, 242 A.3d 403 (Pa. Super. 2020); *Commonwealth v. Mickley*, 240 A.3d 957 (Pa. Super. 2020); *Commonwealth v. Torres*, 240 A.3d 127 (Pa. Super. 2020).[2]  The issue has not yet been resolved.

As our Supreme Court guided, "a court need not ignore new scientific evidence merely because a litigant in a prior case provided less convincing evidence." *Torsilieri*, 232 A.3d at 596.  It emphasized that "all cases are evaluated on the record *created in the individual case*." *Id.* at 595-96 (emphasis added).  As a result, the courts will likely face continuous litigation of this issue until the presumption is successfully rebutted.

Such duplicative litigation of a substantial policy consideration is not only burdensome for the courts, but onerous on individual offenders who must put forth "scientific evidence" to prevail.[3]  *Torsilieri*, 232 A.3d at 596.  "[T]he General Assembly's ability to examine social policy issues and to balance competing

---

[2] This list does not include the multitude of cases proceeding at the court of common pleas level.

[3] The unintended inequitable ramification is that those with the financial wherewithal to compile such scientific evidence will have a meaningful opportunity to challenge the presumption, but those without will not.

considerations is superior to that of the judicial branch." *Torsilieri*, 232 A.3d at 583 (quoting *Commonwealth v. Hale*, 128 A.3d 781, 785-86 (Pa. 2015)).  I echo Justice Mundy's sentiment that we should defer to the General Assembly's findings in matters "concerning 'complex societal issues' such as the efficacy of sex offender registration laws in preventing recidivism . . . especially where there is a lack of consensus among authorities."  *Torsilieri*, 232 A.3d at 609 (Mundy, J., dissenting) (citing *Commonwealth v. Muniz*, 164 A.3d 1189, 1217 (Pa. 2017)); *see Basehore v. Hampden Industrial Development Authority*, 248 A.2d 212, 217 (Pa. 1968) ("[C]ourts are not in a position to assemble and evaluate the necessary empirical data which forms the basis for the legislature's findings.").

Nevertheless, in light of *Torsilieri* and the colorable claim presented in this case, I agree with the Majority's disposition to deny the preliminary objections and allow the case to move forward.  However, I would urge the General Assembly to reexamine whether the scientific evidence continues to support its statutory public policy declaration that sexual offenders pose a high risk of committing additional sexual offenses and settle this issue by the appropriate legislative means.

_____
MICHAEL H. WOJCIK, Judge